UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Kyle Jerome Dalen, individually and on behalf of all others similarly situated,<br><br>Plaintiff(s),<br><br>vs.<br><br>Jodi Harpstead, Commissioner of the Minnesota Department of Human Services, *in her individual and official capacities*,<br><br>Defendant. | Case No. 23-cv-1877 (JRT/DJF)<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT** |

Plaintiff Kyle Jerome Dalen, individually, and on behalf of all others similarly situated, alleges as follows:

## INTRODUCTION

1. The Minnesota Commitment and Treatment Act (the "Commitment Act") governs the procedures and standards for civil commitment of criminal defendants pursuant to Rule 20 of the Minnesota Rules of Criminal Procedure. When a judge orders a defendant committed under certain provisions of Rule 20, the Commitment Act requires that the defendant be committed to the custody of Defendant Commissioner of the Department of Human Services. Until recently, the Commitment Act required the Commissioner to admit such patients to a state-operated treatment program within 48 hours of the commitment order. After years of neglecting this statutory duty—leaving innocent individuals with severe mental health symptoms to languish in jails for weeks or months—the

1

Commissioner successfully lobbied the Minnesota Legislature to amend the Commitment Act to nullify the 48-hour law and allow for mentally ill individuals to be held without adequate medical treatment in jails for indefinite periods.

2.     The amendment to the Commitment Act is unconstitutional and infringes on Plaintiff's rights. Plaintiff brings this action under the United States and Minnesota State Constitutions and state law and seeks declaratory and injunctive relief and damages.

**PARTIES & VENUE**

3.     Plaintiff Kyle. Dalen is an individual and a resident of Dakota County, Minnesota. Mr. Dalen suffers from antisocial personality disorder, narcissistic personality disorder, and chemical dependency. Mr. Dalen was initially committed to the custody of the Commissioner by a November 3, 2022, court order. On April 4, 2023—while Mr. Dalen was still committed to the Commissioner's custody—he was arrested, jailed, and charged in Stearns County criminal file No. 73-CR-23-2528. Mr. Dalen had not received any treatment since the court's November 3 order. Following an April 28, 2023, recommitment hearing, the court issued an order for continued commitment. Neither commitment order was appealed. Mr. Dalen was only recently admitted to a state operated treatment program.

4.     Defendant Jodi Harpstead is the Commissioner of the Minnesota Department of Human Services. Defendant Harpstead, in her official and individual capacities, implemented, retained, and carried out policies that violated the constitutional, statutory, and common law rights of Plaintiff.

## THE MINNESOTA COMMITMENT AND TREATMENT ACT

5.  The Commitment Act governs the procedures and standards for the civil commitment and treatment of persons due to mental illness, developmental disability, or chemical dependence. Minn. Stat. §§ 253B.01 *et seq*. The statute also provides procedures for when a person charged with a crime is found to be incompetent to plead, be tried, or be sentenced under the Minnesota Rules of Criminal Procedure. *Id*.

6.  Prior to May 26, 2023, when a court ordered that a person charged with a crime be confined to a treatment program for a competency examination and/or treatment prior to being tried or sentenced, the Commitment Act required that the court order the commitment to the Commissioner, who was then required to admit the patient to a state-operated treatment program within 48 hours of the commitment order. Minn. Stat. § 253B.10, subd. 1(b). After flagrantly ignoring this requirement for years, Defendant was harshly criticized by private citizens and law enforcement organizations for allowing mentally ill individuals in her custody to remain in jails for *months* before being transferred to a treatment facility.[1] Defendant was also the subject of numerous successful lawsuits alleging she had violated an official duty imposed by law and was liable for damages.[2]

---

[1] Eric Rasmussen, *'Languishing in jails' – State called out for failure to treat inmates covered by '48-hour law'*, KSTP, https://kstp.com/5-investigates/languishing-in-jails-state-called-out-for-failure-to-treat-inmates-covered-by-48-hour-law/ (last accessed May 31, 2023); Eric Rasmussen, *Sheriffs to DHS: 'Pay up' for inmates waiting on mental health beds*, KSTP, https://kstp.com/kstp-news/top-news/sheriffs-to-dhs-pay-up-for-inmates-waiting-on-mental-health-beds/ (last accessed May 31, 2023).

[2] *See, e.g.*, *Swope v. Harpstead*, Case No. 70-CV-22-13153, Dkt. No. 109, Findings of Fact, Conclusions of Law, and Order Denying Demurrer, and Peremptory Writ of Mandamus, at 9–14 (Scott County, Feb. 22, 2023) (finding Defendant liable for damages for refusing to transfer

7.  DHS has the single largest budget of any government department in the state. That budget consists of appropriations for, *inter alia*, "direct care and treatment," which DHS describes as "psychiatric hospitals and other inpatient mental health treatment facilities" and "[i]n all, DHS delivers these services at about 200 sites statewide," including Anoka-Metro Regional Treatment Center (AMRCT), the largest state-operated treatment program as defined in Minn. Stat. § 253B.02, subd. 18d.

8.  Despite Defendant's substantial operating budget and legislative allocations specifically for the operation of state-operated treatment programs, Defendant attempted to excuse her refusal to follow the 48-hour rule, citing budgetary restrictions (as well as an intentional misreading of the statute, which every court to have considered the issue had rejected).

9.  Rather than ask the legislature for additional funds for treatment programs or for additional resources to expand these operations, Defendant and her counsel lobbied the Minnesota Legislature to change the law to remove any deadline to move individuals to psychiatric hospitals or other facilities that would provide medical care for the mentally ill.

10. Sometime in or around March 2023, the Department of Human Services submitted a bill to the legislature proposing to amend section 253B.10, subd. 1(b) of the Commitment Act, such that the Commissioner would be required to admit patients within

---

plaintiff for 57 days); *Ly v. Harpstead*, Case No. 70-CV-22-13781, Dkt. No. 65, Findings of Fact, Conclusions of Law and Order Denying Demurrer, Ordering a Peremptory Writ of Mandamus, and Judgment for Petitioner, at 12-16 (Scott County, Dec. 21, 2022) ("Ly Order") (same for over 60 days).

4

48 hours of a determination that a "medically appropriate bed" is available. The legislature passed DHS's bill, and the Governor signed it into law effective May 26, 2023. The bill added subsection (e) to Minn. Stat. § 253B.10 subd. 1, which provides: "Patients described in paragraph (b) must be admitted to a state-operated treatment program within 48 hours of the Office of Medical Director, under section 246.018, or a designee determining that a medically appropriate bed is available. This paragraph expires on June 30, 2025" (the "Commitment Act Amendment").

11. In effect, this amendment gives Defendant unfettered discretion in the timing of transfer and effectively legalizes extrajudicial incarceration and punishment of vulnerable individuals who have not been convicted of any crime.

12. Upon information and belief, at any given time there are between 40 and 60 individuals who have been found incompetent to assist in their own defense and are incarcerated in county jails or prisons awaiting transfer to state-operated treatment facilities.

13. The policies underlying the "48-hour rule" as it existed prior to the Commitment Act Amendment, are evident. In the case of civil commitments, the rule ensured that persons in state custody who have severe mental health symptoms get the treatment they need as soon as possible. In the case of competency examinations, the rule ensured that a person's competency to understand the proceedings or participate in the defense is examined in an environment conducive to that crucial determination. In both cases, the 48-hour rule ensured that defendants with mental or cognitive health needs do

not suffer prolonged time periods in jail—where the conditions and lack of treatment can worsen their symptoms and present a serious risk of harm to them, other detainees, or staff.

14. The Commitment Act guarantees to those committed under it a right to numerous services and liberties not afforded to jail detainees, including a right "to receive proper care and treatment, best adapted, according to contemporary professional standards, to rendering further supervision unnecessary." Minn. Stat. § 253B.03 subd. 7. Subject to limited exceptions, committed persons are also entitled to be free from restraints, to correspond freely, to receive visitors and phone calls, and to periodic assessments of their mental health and need for continued commitment. *See* Minn. Stat. § 253B.03.

## **CLASS ACTION ALLEGATIONS**

15. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff Brings this action on behalf of himself and a class of all others similarly situated. The Class is defined as follows:

> All persons who have been detained in any jail or prison for more than 48 hours after having been ordered civilly committed under circumstances described in any of the four sub-paragraphs of Minnesota Statutes Section 253B.10, subdivision 1, paragraph (b)(1)–(4).

16. The Plaintiff Class is so numerous that joinder of all the members would be impracticable. On information and belief, there are regularly over sixty individuals detained in prisons or jails in violation of the 48-hour rule at one time. Given that the Class would extend back to the applicable statute of limitations and include individuals who have not yet been committed and held in violation of 48-hour rule, it is likely that the Plaintiff Class contains hundreds of members.

17.     Common questions of law and fact exist as to all Class members. These questions predominate over any questions unique to any individual Class member and include, without limitation:

    a. Whether the Commitment Act creates an interest protected by due process in admission to a state-operated treatment program within 48 hours of commitment, and whether such an interest was lawfully altered or revoked by the Commitment Act Amendment.

    b. Whether the Commitment Act Amendment is unconstitutional;

    c. Whether Defendant's violation of the Commitment Act violates Plaintiff and Class members' independent due-process right to adequate medical care;

    d. Whether Defendant's conduct violates procedural and substantive due process under the United States and Minnesota State Constitutions;

    e. Whether Defendant's conduct constitutes tortious infliction of emotional distress or false imprisonment; and

    f. Damages.

18.     Plaintiff's claims are typical of the claims of the Class. Defendant's actions have affected Class members equally because those actions were directed at Plaintiff and Class members and affected each in the same manner. Accordingly, Plaintiff's claims against Defendant based on the conduct alleged herein are identical to the claims of other Class members.

19.     Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff is a Class member and has no interests adverse to the interests of their respective classes.

Plaintiff is committed to prosecuting this action to final resolution and has retained competent counsel with extensive experience in complex class action and civil rights litigation who will vigorously pursue this litigation on behalf of the Classes.

20. A class action is superior to other methods of adjudicating this controversy.

21. The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendant.

22. Defendant has acted and refused to act on grounds generally applicable to the Class. Defendant's pattern of unconstitutional conduct has been directed at Plaintiff only by virtue of his membership in the class.

23. The identity of Class members would be easily ascertainable from Defendant's records.

## CAUSES OF ACTION

### COUNT I:
### Due Process – Void for Vagueness
### Under the United States and Minnesota State Constitutions

24. Plaintiff and the Plaintiff Class restate and reallege all previous paragraphs of this Complaint.

25. The Fourteenth Amendment of the United States Constitution provides that states may not deprive a person of life, liberty, or property without due process of law.

26. The due process protections guaranteed by the Minnesota Constitution are coextensive with those guaranteed by the United States Constitution. *State v. Holloway*, 916 N.W.2d 338, 344 (Minn. 2018).

27. The Commitment Act Amendment deprives Plaintiff and Class members of due process of law because it is unconstitutionally vague. The phrase "medically appropriate bed" is so vague that persons of common intelligence must guess as to its meaning and could differ as to its application.

28. The Commitment Act Amendment grants patients a right to be admitted to a state-operated treatment program within 48 hours of "determining that a medically appropriate bed is available." However, whether a bed is "medically appropriate" or "available" is left to the ultimate discretion of DHS and the Commissioner. The Commitment Act Amendment fails to provide constitutionally adequate notice of Plaintiffs' rights and Defendant's duties.

29. The Commitment Act Amendment impermissibly delegates basic policy matters to Defendant for resolution on an ad hoc and subjective basis, thereby permitting arbitrary and discriminatory application of the law with no process for checking or challenging that application.

30. For the foregoing reasons, Plaintiff and Class members are entitled to a declaration under 28 U.S.C. § 2201(a) that the Commitment Act Amendment is unconstitutionally vague, as well as an order enjoining enforcement of the Commitment Act Amendment.

### COUNT II:
### Separation of Powers Doctrine
### Under the United States and Minnesota State Constitutions

31. Plaintiff and the Plaintiff Class restate and reallege all previous paragraphs of this Complaint.

32. Whether a criminal defendant should undergo competency evaluation or treatment prior to pleading or being tried is a determination relegated to the judicial branch under constitutional precedent and rules of criminal procedure.

33. By requiring Defendant to effectuate commitment orders "within 48 hours of a medically appropriate bed," while at the same time allowing Defendant to ultimately determine whether a bed is "medically appropriate" and "available," the Commitment Act Amendment effectively gives Defendant the authority to decide if and when competency evaluation and treatment occur in every case.

34. The Commitment Act Amendment therefore delegates judicial power to a department of the executive branch in violation of the separation of powers doctrine.

35. Plaintiff and Class members are entitled to a declaration under 28 U.S.C. § 2201(a) that the Commitment Act Amendment is unconstitutional, as well as an order enjoining enforcement of the Commitment Act Amendment.

## COUNT III:
### Due Process – Deliberate Indifference
### Under 42 U.S.C. § 1983

36. Plaintiff and the Plaintiff Class restate and reallege all previous paragraphs of this Complaint.

37. As a pretrial detainee, Plaintiff and Class members has a right to adequate medical care under the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

38. Plaintiff and Class members suffer objectively serious medical needs. Defendant actually knew about these needs because she receives court orders placing

Plaintiff and Class members in her custody for examination and treatment of those needs. Defendant deliberately disregarded these severe medical needs by denying Plaintiff and Class members access to such treatment, leaving them to languish in jails and prisons.

39. Defendant deliberately, unnecessarily, and wantonly caused Plaintiff and Class members to suffer. Defendant actually knew that the conditions of jail are severely detrimental to individuals suffering from the medical needs for which Plaintiff and Class members are committed, yet she refused to remove Plaintiff and Class members from those conditions to get the treatment they needed.

40. Defendant has thus violated Plaintiff and Class members' due process rights and deprived them of their protected liberty interests in violation of the United States and Minnesota Constitutions.

41. As a result of Defendant's unlawful conduct, Plaintiff and Class members have suffered and continue to suffer damages, the exact amount to be determined at trial.

### COUNT IV:
### Due Process – Pretrial Punishment
### Under 42 U.S.C. § 1983

42. Plaintiff and the Plaintiff Class restate and reallege all previous paragraphs of this Complaint.

43. As civilly committed individuals, Plaintiff and Class members are entitled to more considerate treatment and conditions of confinement than convicted criminals.

44. The state may not constitutionally punish Plaintiff or Class members because they are pretrial detainees who have not been convicted of any crime.

45. The conditions of county jails and state prisons are severely detrimental to the safety and wellbeing of individuals who suffer from disorders and dependencies like Plaintiff and Class members.

46. The conditions of Plaintiff and Class members' confinement demonstrate that their confinement is punitive.

47. There is no legitimate government purpose to letting Plaintiff and Class members languish in jail, and the severe harm done to them is grossly excessive to any legitimate purpose proffered by Defendant.

48. Defendant's refusal to timely remove Plaintiff and Class members from such conditions therefore constitutes punishment absent a criminal conviction in violation of the Constitution.

49. Defendant has thus violated Plaintiff and Class members' due process rights and deprived them of their protected liberty interests in violation of the United States and Minnesota Constitutions.

50. As a result of Defendant's unlawful conduct, Plaintiff and Class members have suffered and continue to suffer damages, the exact amount to be determined at trial.

## COUNT V:
### Due Process – Unreasonable Restraints
### Under 42 U.S.C. § 1983

51. Plaintiff and the Plaintiff Class restate and reallege all previous paragraphs of this Complaint.

52. Plaintiff and Class members have a liberty interest in safety and freedom from bodily restraint.

53. Plaintiff and Class members' freedom from restraint cannot be abridged except when based on the professional judgment of an appropriate professional.

54. Defendant abridged Plaintiff and Class members' freedom from bodily restraint.

55. Because Plaintiff and Class members were committed due to mental illness and/or chemical dependence, the only "appropriate professional" whose judgment should be considered is a medical doctor.

56. Plaintiff and Class members' unnecessarily extended detention and the attendant conditions, including but not limited to the complete lack of mental health treatment and *de minimus* physical health treatment, are such a substantial departure from professional judgment, practice, and standards as to demonstrate that the decision to hold Plaintiff in jail was not actually based on professional judgment.

57. Defendant has thus violated Plaintiff and Class members' due process rights and deprived them of their protected liberty interests in violation of the United States and Minnesota Constitutions.

58. As a result of Defendant's unlawful conduct, Plaintiff and Class members have suffered and continue to suffer damages, the exact amount to be determined at trial.

### COUNT VI:
**Substantive Due Process
Under 42 U.S.C. § 1983**

59. Plaintiff and the Plaintiff Class restate and reallege all previous paragraphs of this Complaint.

60. The Due Process Fourteenth Amendment guarantees process which prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty or otherwise offends judicial notions of fairness or is offensive to human dignity.

61. Plaintiff and Class members had a fundamental right to freedom from pretrial punishment, freedom from unreasonable restraints, and access to adequate medical care.

62. The rights of an individual to be free from pretrial punishment, free from unreasonable restraints, and to access to adequate medical care are rights that are deeply rooted in our nation's history.

63. Defendant violated Plaintiff and Class members' constitutional rights by denying them, *inter alia*, the right to be free from pretrial punishment, the right to be free from unreasonable restraints, and the right to adequate medical care.

64. Defendant's decision to continue to detain Plaintiff and Class members in the jails and prisons with knowledge that they would likely suffer severe mental and physical injuries constitutes conduct that evinces deliberate injurious intent, shocks the conscience, and interferes with the rights implicit in the concept of ordered liberty.

65. Moreover, Defendant's lobbying, either individually and/or through counsel, for the Commitment Act Amendment evinces a manifest intent to jeopardize the physical and mental welfare of those in her custody.

66. Such conduct, in its totality, is so egregious that it shocks the contemporary conscience.

67. As a direct and proximate result of Defendant's conduct, Plaintiff and Class members sustained damages for which Defendant is liable, in an amount to be established at trial.

## COUNT VII:
### Intentional Infliction of Emotional Distress

68. Plaintiff and the Plaintiff Class restate and reallege all previous paragraphs of this Complaint.

69. Defendant's intentional conduct—including but not limited to knowingly and intentionally abandoning Plaintiff, a person in acute need of mental health treatment, in jails or prisons for days, weeks, or months, where Defendant knew they would not receive the treatment they needed—is extreme and outrageous, in that it passes the boundaries of decency and is utterly intolerable to the civilized community.

70. Defendant had knowledge of and intentionally disregarded facts that create a high probability of injury to the rights and safety of Plaintiff and Class members and acted in conscious and intentional disregard of that probability of injury.

71. Defendant's conduct caused severe emotional distress to Plaintiff and Class members.

72. A private person who acted as Defendant under the circumstances alleged herein would be civilly liable to Plaintiff and Class members for intentional infliction of emotional distress.

73. As a direct and proximate result of Defendant's conduct, Plaintiff and Class members sustained damages for which Defendant is liable, in an amount to be established at trial.

## COUNT VIII:
### Negligent Infliction of Emotional Distress

74. Plaintiff and the Plaintiff Class restate and reallege all previous paragraphs of this Complaint.

75. Defendant had a duty to care for Plaintiff and Class members because they were committed to Defendant's care and custody at the time of their injuries.

76. Defendant breached that duty by refusing to transfer Plaintiff and Class members out of jail despite having sole discretion to do so and knowing that they would not receive the care and treatment they required.

77. Plaintiff and Class members suffered injuries while held in jail because they were not given necessary care and treatment and because the environment of jail is counter-therapeutic. Plaintiff and Class members were detained in jail for an extended period of time due to Defendant's refusal to transfer them to state-operated treatment programs. Therefore, Plaintiff and Class members' injuries were proximately caused by Defendant.

78. Plaintiff and Class members' injuries were a foreseeable consequence of Defendant's conduct because Defendant was aware that mentally ill individuals receive *de minimis*, if any, mental health treatment and care while detained in jails and prisons. Additionally, Defendant could foresee Plaintiff and Class members' injuries because

Defendant knew of other individuals who were injured due to Defendant's refusal to transfer them out of jails or prisons.

79. Plaintiff and Class members' injuries have caused them severe mental anguish, anxiety, fear, and humiliation.

80. As a direct and proximate result of Defendant's negligence, Plaintiff and Class members sustained damages for which Defendant is liable, in an amount to be established at trial.

## COUNT IX:
## False Imprisonment

81. Plaintiff and the Plaintiff Class restate and reallege all previous paragraphs of this Complaint.

82. Defendant acted intentionally to confine Plaintiff and Class members and caused such confinement to continue without legal right. Defendant did so within the scope of Defendant's office or employment.

83. A private person who confined Plaintiff and Class members under the circumstances alleged herein would be civilly liable to Plaintiff and Class members for false imprisonment.

84. As a direct and proximate result of Defendant's conduct, Plaintiff and Class members sustained damages for which Defendant is liable, in an amount to be established at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and Class members pray for judgment against Defendant as follows:

A. A declaration that the actions of Defendant, as described above, are unconstitutional;

B. A declaration that the above-referenced statute is unconstitutionally vague;

C. An order enjoining Defendant's ongoing unconstitutional conduct;

D. An order permanently enjoining Defendant from Depriving Plaintiff and Class members their constitutional rights;

E. Damages compensating Plaintiff and Class members for their injuries, including but not limited to compensatory, pecuniary, and medical expense damages;

F. Costs, disbursements, expenses, and attorneys' fees;

G. Pre- and post-judgment interest, to the extent allowable; and

H. Such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff and Class members hereby demand a trial by jury in this case as to all issues so triable.

Dated: July 5, 2023  **GUSTAFSON GLUEK PLLC**

*/s/Daniel E. Gustafson*
Daniel E. Gustafson (#202241)
David A. Goodwin (#386715)
Anthony J. Stauber (#401093)
Joseph E. Nelson (#402378)
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600

Minneapolis, MN 55402
Telephone: 612-333-8844
Fax: 612-339-6622
dgustafson@gustafsongluek.com
dgoodwin@gustafsongluek.com
tstabuer@gustafsongluek.com
jnelson@gustafsongluek.com

**JASPERS, MORIARTY & WETHERILLE, P.A.**
Kevin J. Wetherille (#033036X)
James P. Conway (#0391044)
206 Scott Street
Shakopee, MN 55379
(952) 445-2817

**THRONDSET MICHENFELDER, LLC**
Jason Gustafson (#0403297)
One Central Avenue West
St. Michael, MN 55376, Suite 101
Tel: (763)-515-6110
Cell: (612)-889-0341

**FREMSTAD LAW**
Hannah L. Scheidecker (#0401987)
3003 32nd Ave. S., Ste. 240
Fargo, ND 58103
(701) 478-7620
hannah@fremstadlaw.com

*Attorneys for Plaintiff and the Proposed Class*