# UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

Kyle Jerome Dalen,

Case No. 23-cv-1877 (JRT/DJF)

Plaintiff,

vs.

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF HER MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

Jodi Harpstead, Commissioner of the Minnesota Department of Human Services, in her individual and official capacities,

Defendant.

## INTRODUCTION

Plaintiffs urge this Court to hold that the U.S. Constitution prevents the State of Minnesota from amending a statute to make explicit that when prisoners and detainees have been referred to a state treatment facility due to mental illness, they should be transferred only to appropriate facilities with beds available to treat them. Practically, Plaintiffs' claims are built on an impossible assumption: that urgent rhetoric is enough to transcend the limited capacity of these facilities to provide care. The legal foundation of Plaintiffs' argument is no better. Plaintiffs theorize that, prior to amendment, the statute they challenge established a permanent Constitutional right to be transferred within 48 hours of commitment or other court order. But state law does not create fundamental rights, and Plaintiffs have not and cannot show that their substantive due process rights were violated. Nor is Plaintiffs' preference for the pre-amendment statute enough to remove the law from the power of the legislature and the governor to amend.

Plaintiffs otherwise append a variety of tort claims to this central argument, but only to recite the elements. The Complaint contains no concrete allegations addressing the conditions of Plaintiffs' incarceration, and no specific injury is alleged.

The Complaint must be dismissed.

## FACTUAL BACKGROUND

Named plaintiff Kyle Jerome Dalen brings this action on behalf of himself and a putative class of people subject to Minn. Stat. §253B.10 (2023) who were "detained in any jail or prison for more than 48 hours after having been ordered civilly committed." First Amended Class Action Complaint (Dkt. 10) (the "FAC" or "Complaint") at ¶ 15. Mr. Dalen alleges that he was civilly committed by court order on November 3, 2022.[1] FAC ¶ 3. In March 2023, Mr. Dalen was confined to Stearns County jail. *Id.* The Complaint does not include any specific factual allegations regarding the conditions of Mr. Dalen's confinement, his health, or the treatment that he received during that period. Mr. Dalen does not challenge the orders detaining him in advance of his criminal trial. *See, e.g., State v. Dalen*, Case No. 73-CR-23-2528, Register of Actions, Conditions of Release (April 3, 2023) ("Register of Actions") (conditioning release on the payment of $50,000 bail or bond, with conditions, or $150,000 with no conditions). After incarceration, Mr. Dalen's

---

[1] Public records indicate that his commitment order issued on November 9, *see In the Matter of the Civil Commitment of Kyle Jerome Dalen*, Dakota County District Court, First Judicial District of Minnesota, Case No. 19HA-PR-23-505 (*In re Dalen*), Order for Commitment (Index # 39) (November 9, 2022)) "[I]tems subject to judicial notice" and "matters of public record", such as public court orders, can be considered without converting a motion to dismiss into a motion for summary judgment. *Alsibai v. Experian Info. Sols., Inc*., 488 F. Supp. 3d 840, 847 (D. Minn. 2020) (quoting Zean v. Fairview Health Servs., 858 F.3d 520, 526 (8th Cir. 2017).

civil commitment was continued by the court. *See, In the Matter of the Civil Commitment of Kyle Jerome Dalen*, Itasca County District Court, Ninth Judicial District of Minnesota, Case No. 31-PR-22-2358, Order for Continued Commitment, (May 4, 2023). Public records confirm that Mr. Dalen was transferred to the Anoka Metro Regional Treatment Center (AMRTC) on June 6, 2023. *See In re Dalen*, Order to Transport (Index # 61) (June 5, 2023) and Commitment Receipt (Index # 65) (June 7, 2023); *see also* Removal Exhibit 11 (Notice to Withdraw Motion [for Emergency Injunctive Relief]) (acknowledging Mr. Dalen's transfer).

Mr. Dalen also alleges that the Minnesota Department of Human Services (DHS) had an obligation under Minn. Stat. § 253B.10, subd. 1(b), to admit him to a state-operated treatment program as a priority patient.[2] FAC ¶ 7. In November 2022, § 253B.10 subdivision 1(b) indicated that priority patients "must be admitted to a state-operated treatment program within 48 hours," but did not identify what event started the 48-hour clock. Mr. Dalen alleges that Defendant Jodi Harpstead ("Defendant" or "the Commissioner") asked the Minnesota Legislature to amend § 253B.10 to explicitly condition admission of priority patients to a treatment facility on the availability of a "medically appropriate bed." FAC ¶ 11. Governor Walz signed a bill amending § 253B.10 on May 24, 2023. (*See* Human services finance and policy bill, SF2934, 93rd Legislature (2023), Chapter 61, Section 7). This amendment added paragraph (e) to subdivision 1:

---

[2] Defendant assumes for purposes of this motion that Mr. Dalen meets one of the criteria for priority admission set forth in § 253B.10, subd. 1(b), but it is not clear from the face of the Complaint which of the four enumerated categories of priority patients Mr. Dalen claims to belong to.

"Patients described in paragraph (b) must be admitted to a state-operated treatment program within 48 hours of the Office of Medical Director, under section 246.018, or a designee determining that a medically appropriate bed is available. This paragraph expires on June 30, 2025." § 253B.10 (2023) ("The Amended Act").

Mr. Dalen claims that the Amended Act violates the Fourteenth Amendment because the phrase "medically appropriate bed" is vague and that the Amended Act violates the separation of powers doctrine of the U.S. Constitution by allowing the Commissioner, rather than a court, to determine whether a medically appropriate bed is available. FAC Counts I & II. Mr. Dalen also alleges that, by failing to admit him to a treatment facility within 48 hours of his May 4 recommitment order, the Commissioner violated substantive due process under the Fourteenth Amendment. FAC Counts III-VI. Finally, the Complaint includes state law claims based on the same conduct: intentional infliction of emotional distress (Count VII), negligent infliction of emotional distress (Count VIII), and false imprisonment (Count IX).

## STANDARD OF REVIEW

Deficiencies in the pleading under Rule 12(b)(6) eliminates actions that are fatally flawed in their legal premises, "streamlin[ing] litigation by dispensing with needless discovery and factfinding." *Neitzke v. Williams,* 490 U.S. 319, 326-27 (1989).

In reviewing a complaint under a Rule 12(b)(6) motion to dismiss, the Court considers all facts alleged in the complaint as true and construes the pleadings in a light most favorable to the non-moving party. *See Brotherhood of Maint. of Way Emp. v. Burlington N. Santa Fe R.R.,* 270 F.3d 637, 638 (8th Cir. 2001). However, to avoid

dismissal, a complaint must provide more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal,* 556 U.S. 662, 680-81 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)); *see also Dubois v. Ford Motor Credit Co.*, 276 F.3d 1019, 1022 (8th Cir. 2002) ("[A] complaint must contain sufficient facts, as opposed to mere conclusions, to satisfy the legal requirements of the claim[s].").

Importantly, the Court is "not required to divine the litigant's intent and create claims that are not clearly raised, and it need not conjure up unpled allegations to save a complaint." *Warmington v. Bd. of Regents of Univ. of Minn.*, 998 F.3d 789, 796 (8th Cir. 2021) (quoting *Gregory v. Dill'rd's, Inc.*, 565 F.3d 464, 473 (8th Cir. 2009)). Similarly, "the court is free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." *Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 870 (8th Cir. 2002).

This pleading standard applies equally to Rule 12(b)(1) challenges to whether a plaintiff has sufficiently alleged standing to bring the action. *Stalley v. Cath. Health Initiatives*, 509 F.3d 517, 521 (8th Cir. 2007) (citing *Twombly*).

A plaintiff bringing claims under 42 U.S.C. § 1983 "must show that he was deprived of a right secured by the Constitution and the laws of the United States and that the deprivation was committed by a person acting under color of state law." *Alexander v. Hedback*, 718 F.3d 762, 765 (8th Cir. 2013). That being said, "[c]onstitutional claims brought under 42 U.S.C. § 1983 are discrete claims and as such should not be pled in [a] shotgun manner." *Liggins v. Morris*, 749 F. Supp. 967, 971 (D. Minn. 1990)).

# ARGUMENT

## I. MR. DALEN LACKS STANDING TO CHALLENGE THE AMENDED ACT.

A plaintiff must "must establish the requisite standing to sue."[3] *Whitmore v. Arkansas*, 495 U.S. 149, 154 (1990). If standing is not plead, the complaint is dismissible for lack of jurisdiction. *See* Fed. R. Civ. P. 12(b)(1); *Stalley*, 509 F.3d at 521. "[S]tanding consists of three elements. The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), as revised (May 24, 2016) (internal quotations omitted). The injury must be both "concrete and particularized" and "actual or imminent, not 'conjectural' or 'hypothetical.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992). "[A] speculative or hypothetical risk is insufficient." *Braitberg v. Charter Commc'ns, Inc.*, 836 F.3d 925, 930 (8th Cir. 2016). Therefore, a plaintiff only has standing to challenge the constitutionality of a statute that has been (or is being) applied to their detriment.

Neither Mr. Dalen nor the putative class have alleged an injury by application of the Amended Act. Indeed, accepting the allegations in the Complaint as true, passage of the Amended Act had no discernable effect on Mr. Dalen's transfer. Mr. Dalen seems to claim to have had priority admission status starting with his May 4 recommitment order, before

---

[3] For the same reasons that Mr. Dalen lacks standing, he fails to meet the actual controversy requirement to bring an action for declaratory judgement under 28 U.S.C. 2201(a). *Prasad v. Henson*, No. 3:21-CV-83, 2022 WL 715810, at *3 (D.N.D. Mar. 10, 2022) ("The statutory standard for determining whether a controversy exists under the Declaratory Judgment Act "is the same as that under the Constitution.") (quotations omitted, citing *Cass Cty. v. U.S.*, 570 F.2d 737, 739 (8th Cir. 1978).

the unamended version of §253B.10 was in effect. But he was not transferred to a treatment facility without consideration of its capacity in this period any more than he was after the Amended Act went into effect.

While Mr. Dalen floridly denounces the Amended Act as empowering the Commissioner with "unfettered discretion" that "legalizes extrajudicial incarceration," he again does not allege any specific action or inaction by the Commissioner traceable to the Amended Act. FAC ¶ 12. Indeed, under both versions of the statute, Mr. Dalen's admission to treatment turned on precisely the same issue: the availability of a medically appropriate bed. Finally, Mr. Dalen's incarceration was not *caused* by the fact that he was not immediately admitted for treatment at DHS: had Mr. Dalen posted bail, he could have been released to the community. *See* Register of Actions. There is no injury here.

Because Mr. Dalen has not alleged that passage of the Amended Act in any way delayed his transfer to an appropriate treatment facility (or caused any other injury), he has not alleged an injury in fact and lacks standing to challenge the constitutionality of the Amended Act.

## II.    MR. DALEN'S CHALLENGE TO THE AMENDED ACT MUST FAIL.

### A.    The Amended Act Is Not Impermissibly Vague (Count I).

Mr. Dalen's request for a declaratory judgement pronouncing the Amended Act unconstitutionally vague and therefore void fails because the act is both far outside the core concerns of the doctrine and is not vague. The vagueness doctrine is principally concerned with criminal prohibitions: "'Void for vagueness simply means that criminal responsibility should not attach where one could not reasonably understand that his contemplated conduct

is proscribed.'" *Washam*, 312 F.3d at 929 (quoting *United States v. Natl Dairy Prods. Corp.*, 372 U.S. 29, 32–33 (1963)). The void-for-vagueness doctrine renders a criminal law unconstitutional if the law "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *U.S. v. Williams*, 553 U.S. 285, 304, (2008); *State v. Ness*, 819 N.W. 2d 219, 228 (Minn. Ct. App. 2012) (same). Statues that do not impose criminal sanctions get far less scrutiny. *Sessions v. Dimaya*, 138 S. Ct. 1204, 1212 (2018) (acknowledging that the Supreme Court has "expressed greater tolerance of enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe") (quotation omitted).

The Amended Act falls outside the core concerns of the vagueness doctrine because it is not a criminal statute, and it carries no threat of any sanction based on Mr. Dalen's conduct. In this context, the doctrine "does not preclude the use of ordinary terms to express ideas which find adequate interpretation in common usage and understanding." *Jump v. Goldenhersh*, 619 F.2d 11, 15 (8th Cir. 1980) (quotation omitted).

The Amended Act easily clears this threshold. Mr. Dalen offers only his legal assertion that "the phrase 'medically appropriate bed' is so vague that persons of common intelligence must guess as to its meaning." FAC ¶ 19. In the context of a criminal prohibition, whether a "person of common intelligence must guess as to its meaning" is relevant. *See, e.g., Williams*, 553 U.S. at 304. Here, however, the Amended Act assigns the task of identifying a "medically appropriate bed" to *the Office of the Medical Director* (OMD) (an office within DHS's Direct Care & Treatment Division uniquely qualified to

make that determination[4])—not Mr. Dalen. Language "directed to acts of those engaged in occupations applying specialized knowledge and intellectual skills to the performance of their duties" is not impermissibly vague. *Horn v. Burns & Roe*, 536 F.2d 251, 255 (8th Cir. 1976) (finding that the terms "professional negligence" and "professional services" are not fatally vague when addressing professional conduct). No one else, and certainly not Mr. Dalen, has this responsibility.

Mr. Dalen labels the determination that medically appropriate bedspace is available "ad hoc and subjective." FAC ¶ 21. This argument is absurd. Mr. Dalen asks this Court to direct the Commissioner to immediately admit him to a treatment facility to treat his mental illness, described as "antisocial personality disorder, narcissistic personality disorder, and chemical dependency." FAC ¶ 3. However, Mr. Dalen simultaneously insists that DHS cannot lawfully be allowed to determine what treatment is "medically appropriate" for his illness. The provision of medical treatment cannot be separated from the determination of what treatment is appropriate.[5]

---

[4] By statute the Medical Director must be a licensed physician and board-certified psychiatrist and is responsible for overseeing inpatient health services at the state's treatment centers—i.e., the facilities that receive civilly committed patients. *See* Minn. Stat. § 246.018, subds. 2 & 3.

[5] This is true as a matter of common sense, but it is also part of DHS's mandate. DHS is directed to provide "proper care and treatment" in accord with "contemporary professional standards" to civilly committed patients. 253B.03, subd. 7. In effect, DHS is charged with determining what treatment is "medically appropriate" at all stages of a civilly committed patient's treatment. *Id.* (requiring the creation and monitoring of a treatment plan for every patient). Mr. Dalen cites to this provision but does not explain how DHS could comply without determining what treatment is medically appropriate, let alone how doing so could conceivably benefit patients. FAC ¶ 15.

It is unsurprising, therefore, that the phrase "medically appropriate" is routinely used and enforced in the law. For example, the phrase is used elsewhere in the Minnesota Commitment and Treatment Act (Minn. Stat. chapter 253B) (the MCTA). *See* Minn. Stat. §§ 253B.04, subd. 1(c)(2) (prohibiting civil commitment for persons voluntarily participating in "medically appropriate" treatment) and 253B.05, subd. 5(f) (authorizing telehealth "medically appropriate to the condition and needs of the person being served"). Other Minnesota statutes call for the same determination. *See, e.g.,* §§ 62A.673, *See, e.g.*, subd. 7(1) (requiring that a health carrier's telemonitoring service be "medically appropriate"); 62A.316, section (a)(7) (requiring 80 percent coverage of "medically appropriate and necessary" equipment and section (b)(4)(ii) (requiring coverage of preventative screening and tests determined to be "medically appropriate"); 72A.20, subd. 22(b) (allowing insurers to exclude coverage for treatment they can show is "not medically necessary or medically appropriate"); and 256.0625, subd. 3h (providing coverage for "medically appropriate" telemonitoring services).

And courts have no qualms about enforcing this language. It is, for example, an element that must be proven for the involuntary treatment of mental illness under federal law. *See, e.g, Sell v. U.S.*, 539 U.S. 166, 181 (2003) ("The court must conclude that administration of the drugs is medically appropriate, i.e., in the patient's best medical interest in light of his medical condition."); *see also U.S. v. Mackey*, 171 F. 3d 569, 576 (8th Cir. 2013) (finding no clear error in the district court's determination that administration of antipsychotics was medically appropriate under the circumstances); *U.S. v. Evans*, 404 F.3d 227, 242 (4th Cir. 2005) (holding that the government had failed to meet

its burden to show that the proposed involuntary treatment plan was "medically appropriate"); *U.S. v. Weston*, 255 F.3d 873, 877 (D.C. Cir. 2001) (looking to the judgment of medical professionals to determine whether treatment neuroleptics was "medically appropriate" for treatment of schizophrenia).

The Complaint's insistence that the availability of medically appropriate treatment is a "basic policy matter" only underscores this claim's incoherence. FAC ¶ 21. Whether the space and staff necessary to treat a person with antisocial personality disorder, narcissistic personality disorder, and chemical dependency is available on a given day is a quite plainly a narrow and specific question for a qualified professional to answer. Treatment capacity cannot be created with the stroke of a pen.

Nothing in the Amended Act implicates the vagueness doctrine. This claim must be dismissed.

### B.     The Amended Act Does Not Infringe on Judicial Power (Count II).

Mr. Dalen fails to state claim that the Amended Act violates separation of powers because he does not allege that the act infringes on a judicial function. Under the Minnesota Constitution,[6] the legislature may create substantive law, but "the judicial branch governs

---

[6] Mr. Dalen also purports to bring this claim under the U.S. Constitution and 28 U.S.C. 2201(a). While the U.S. Constitution supports a similar separation of powers doctrine, it is concerned with the powers of the *federal* government. *Stern v. Marshall*, 564 U.S. 462, 483 (2011) (explaining that the "basic concept of separation of powers flows from the scheme of tripartite government adopted in the Constitution, the judicial power can no more be shared with another branch than the Chief Executive, for example, can share with the Judiciary the veto power, or the Congress share with the Judiciary the power to override a Presidential veto") (internal quotation marks omitted). The Minnesota Legislature—not Congress—passed the Amended Act.

procedural matters." *State v. Lemmer*, 736 N.W.2d 650, 657 (Minn. 2007). "A procedural rule neither creates a new cause of action nor deprives a defendant of any defense on the merits." *Reynolds v. State*, 888 N.W.2d 125, 131 (Minn. 2016) (cleaned up, quotations omitted). "But a rule is substantive, and not procedural, when it creates, defines and regulates rights. *Id.* In this analysis, Minnesota courts defer to the legislature and "will only exercise our power to declare a statute unconstitutional when absolutely necessary and only with extreme caution." *Lemmer*, 736 N.W. 2d at 657; *see also Reynolds*, 888 N.W.2d at 131 ("We exercise great restraint when considering the constitutionality of statutes, particularly in the context of separation of powers issues.").

The Amended Act needs no deference to pass muster because it addresses clinical evaluation and treatment, not legal procedure.[7] Indeed, it has long been settled that treatment decisions applicable to civilly committed individuals are outside the province of even the committing court. *Matter of Kolodrubetz*, 411 N.W.2d 528, 534 (Minn. Ct. App. 1987) (a court's authority does not extend to "monitoring specific treatment decisions" short of the involuntary administration of electroconvulsive therapy). Through the

---

[7] The Complaint attempts to skirt this by conflating mental health evaluation and treatment with procedure. Mr. Dalen alleges that the Amended Act "effectively gives Defendant the authority to decide if and when competency evaluation and treatment occur." FAC ¶ 25. The "competency evaluation" would seem to reference competency *examinations* under Minnesota Rule of Criminal Procedure 20.01. *See* Minn. Stat. § 253B.10, subd 1 (b)(1) and (2)). However, these are regularly performed by court-appointed examiners who have no affiliation with DHS. Minn. R. Crim. P. 20.02, subd. 4 (DHS conducts inpatient exams only "[i]f the defendant is not entitled to release or the examination cannot be done on an outpatient basis."). Even when DHS is involved with inpatient Rule 20 evaluations (which Mr. Dalen has not alleged occurred in his case), the Amended Act is not in tension with Rule 20, which only requires that the confinement for evaluation be *limited* to 60 days, not that it begin or end within a specific time frame. *Id.*

Amended Act, the legislature and governor direct Defendant to prioritize the admission of certain patients who have been civilly committed or otherwise ordered into DHS custody for enumerated evaluation and/or treatment purposes. Specifically, admission of a priority patient for treatment is to be accomplished within 48-hours of the OMD's determination that treatment, in the form of a bed in a medically appropriate facility, is available. *Id.* at subd. 1(d). Nothing about the Amended Act infringes upon or even reaches the courts' domain—the procedure for determining that competency evaluation, temporary confinement for treatment, or civil commitment is necessary. The relevant procedure is set forth in the Commitment and Treatment Act Rules and the Rules of Criminal Procedure. Both the commitment order and Mr. Dalen's incarceration happened well before the Amended Act was effective, and nothing in the amended law would have affected either proceeding. No violation of separation of powers is alleged, and this claim must be dismissed.

## III. Mr. Dalen Fails To Allege His Confinement Violated Any Substantive Due Process Right.

### A. Mr. Dalen Failed to State a Claim for Deliberate Indifference in the Delay of his Treatment (Count III).

Where "a [civilly committed] patient's Fourteenth Amendment claim is for constitutionally deficient medical care," courts "apply the deliberate indifference standard from the Eighth Amendment." *Mead v. Palmer*, 794 F.3d 932, 936 (8th Cir. 2015) (citing *Scott v. Benson*, 742 F.3d 335, 339 (8th Cir. 2014); *Senty–Haugen v. Goodno*, 462 F.3d 876, 889–90 (8th Cir. 2006)). "To demonstrate the 'deliberate indifference' necessary to sufficiently plead an Eighth Amendment violation, a plaintiff must

demonstrate (1) that he had an objectively severe medical need, and (2) that [the defendant] knew of, but deliberately disregarded that need." *Sorenson v. Minn. Dep't of Human Servs.* (*Sorenson I*), No. 14-cv-4193, 2015 WL 251720, at *11 (D. Minn. Jan. 20, 2015) (holding MSOP client failed to state a claim upon which relief may be granted regarding alleged deliberate indifference of medical care). An objectively serious medical need is "one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995) (quotation omitted).

A plaintiff "must demonstrate 'more than negligence, more even than gross negligence.'" *Sorenson*, 2015 WL 251720, at *11 (quoting *Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir.1995)). "Deliberate indifference is akin to criminal recklessness." *Id.* (quoting *Drake v. Koss*, 445 F.3d 1038, 1042 (8th Cir. 2006)). Failure to treat a medical condition does not constitute punishment under the Eighth Amendment unless the defendant knew that the plaintiff's medical condition "created an excessive risk" and then failed to act on that knowledge. *Id.* (citing *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997)); *see also Revels v. Vincenz*, 382 F.3d 870, 875 (8th Cir. 2004) (same). "As long as this threshold is not crossed, [civilly committed persons] have no constitutional right to receive a particular or requested course of treatment, and . . . doctors remain free to exercise their independent medical judgment." *Sorenson I*, 2015 WL 251720, at *11 (quoting *Dulany*, 132 F.3d at 1239). Only those "involved in, or directly responsible for," providing medical care can be liable for failure to treat. *Saylor v. Nebraska*, 812 F.3d 637, 644 (8th Cir. 2016), as amended (Mar. 4, 2016) (citations omitted).

Here, the Complaint fails to allege either an objectively serious medical need or that the Commissioner was subjectively aware of such need. First, the Complaint contains no allegations that Mr. Dalen experienced any kind of medical crisis while incarcerated. Instead, the Complaint relies entirely on the finding that Mr. Dalen has mental illness sufficient to warrant civil commitment as evidence of any medical issue at all.[8] Although the Complaint dresses this up with speculation that "conditions of the jail are severely detrimental to individuals suffering from personality disorders and chemical dependency", Mr. Dalen does not allege that his mental illness went untreated, let alone that he was harmed as a result. *Moots v. Lombardi*, 453 F.3d 1020, 1023 (8th Cir. 2006) (an inmate complaining of delay in treatment must offer evidence that delay had detrimental effect). In fact, the Complaint is completely silent as to Mr. Dalen's health while incarcerated.[9] FAC ¶ 31.

Second, whatever his health or treatment status may have been, Mr. Dalen does not plausibly allege that the Commissioner was aware of it. General knowledge of Mr. Dalen's mental illness is not sufficient to meet this prong. *See Judah v. Ovsak*, 550 F. Supp. 3d 687,

---

[8] To the extent that Mr. Dalen's complaint is that he did not receive the specific treatment contemplated in his commitment order while in jail, the Eighth Circuit has rejected his theory. *See Karsjens v. Piper* 845 F.3d 394, 410 (8th Cir. 2017) (finding no "due process right to appropriate or effective or reasonable treatment of the illness or disability that triggered the patient's involuntary confinement") (quotation omitted).

[9] In support of another claim, Negligent Infliction of Emotional Distress, the Mr. Dalen summarily alleges he "suffered injuries while at the Stearns County Jail because he was not given the care and treatment he required and because the environment in the jail was counter therapeutic." FAC ¶ 69. This allegation, however, is due no deference because it is merely a restatement of the elements of the cause of action. *Iqbal,* 556 U.S. at 680-81 (2009). It discloses no meaningful information about Mr. Dalen, his condition, the treatment he received, or any purported injury.

704 (D. Minn. 2021) ("The general allegation that Kneisel refused to address Judah's medical complaints does not plausibly show that Kneisel was subjectively aware of, but deliberately disregarded, a serious medical condition.").

Finally, Mr. Dalen does not allege facts indicating that the Commissioner was indifferent, let alone in manner akin to "criminal recklessness," to his need for treatment. *Drake v. Koss*, 445 F.3d 1038, 1042 (8th Cir. 2006)). As discussed above, even accepting Mr. Dalen's allegations on their face, DHS did not delay or prevent Mr. Dalen's treatment: Mr. Dalen does not allege that he did not receive treatment for his mental illness while incarcerated, and the only alleged delay in transfer was for treatment space at an appropriate facility.[10] No claim can lie on these allegations. *See Crooks v. Nix*, 872 F.2d 800, 804 (8th Cir. 1989) ("Where a prisoner needs medical treatment ***prison officials*** are under a constitutional duty to see that it is furnished.") (emphasis added) (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976).

**B.     Mr. Dalen Failed to State a Claim for Punitive Conditions of Confinement (Count IV).**

Substantive due process claims involving conditions of pre-trial confinement are viewed under the standard established by *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). *See Karsjens II*, 988 F.3d at 1054; *Stearns v. Inmate Servs. Corp.*, 957 F.3d 902, 907 (8th Cir. 2020). Under *Bell*, a condition of confinement is unconstitutionally punitive if it "is

---

[10] The Complaint impugns DHS's "excuse" for not immediately admitting every priority patent for treatment as merely "budgetary", but Mr. Dalen does not allege that Defendant delayed his transfer to AMRTC through neglect or animus. FAC ¶ 9. To the contrary, the news articles cited in the Complaint reflect that, in those instances, any delay in transfer was due to waiting for medically appropriate treatment beds to be available. *Id.* at 3, fn 1.

imposed for the purpose of punishment" as opposed to "incident of some other legitimate governmental purpose." *Id.* at 538. "[I]f a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" *Id.* at 539. Absent "expressly demonstrated intent to punish" a plaintiff must "show that the conditions were not reasonably related to a legitimate governmental purpose or were excessive in relation to that purpose." *Stearns*, 957 F.3d at 907 (8th Cir. 2020). A plaintiff must allege sufficient personal involvement in, or responsibility for, a constitutional violation to state a section 1983 claim. *Asher v. Harpstead*, No. 19-CV-2381 (PJS/DTS), 2021 WL 537930, at *3 (D. Minn. Jan. 15, 2021), *R & R adopted*, No. 19-CV-2381 (PJS/DTS), 2021 WL 533684 (D. Minn. Feb. 12, 2021) *(citing Beck v. LaFleur*, 257 F.3d 764, 766 (8th Cir. 2001)). Allegations based on supervisory responsibility still require the defendant's direct participation. *Id.*

The Complaint is, again, completely silent on the conditions of Mr. Dalen's confinement and no general lack of treatment or resulting specific harm to Mr. Dalen is alleged. Instead, Mr. Dalen broadly cast the delay in treatment at a DHS-operated facility as "punishment." FAC ¶ 40. As discussed above, an allegation that medical treatment was delayed in violation of the Fourteenth Amendment is properly considered under the deliberate indifference standard, not as a claim of punitive conditions. *Butler v. Fletcher*, 465 F.3d 340, 345 (8th Cir. 2006) (rejecting plaintiff's argument that *Bell* should apply to pre-trial detention claims for failure to provide treatment because "deliberate indifference is the appropriate standard of culpability for all claims that prison officials failed to provide pretrial detainees with adequate food, clothing, shelter, medical care, and reasonable

safety"). Even if Mr. Dalen had alleged cognizable punishment, the claims would ***still*** fail because he does not (and could not) allege that the Commissioner played any role in his confinement. *Beck,* 257 F.3d at 766.

Finally, Mr. Dalen's contention that the Commissioner had "no legitimate government purpose" to ensure that he is placed in a medically appropriate facility with the capacity to treat him is farcical. Providing "proper care and treatment, best adapted, according to contemporary professional standards, to rendering further supervision unnecessary"—as opposed to admitting Mr. Dalen to a medically *in*appropriate bed or overcrowding a mental health treatment program—is not just a plainly legitimate purpose, it is the legislative mandate under which DHS provides care to patients under the MCTA. Minn. Stat. § 253B.03. subd. 7.

This claim must be dismissed.

### C.   Mr. Dalen Failed to State a Claim for Unreasonable Restraint (Count V).

Unconvicted detainees and the civilly committed have a protected liberty interest to be free from bodily restraint not imposed in accordance with professional judgment. *Youngberg v. Romeo*, 457 U.S. 307, 319, (1982). This professional judgment standard applies only to "actual physical restraints" like shackles, wrist irons, a "restriction table," and tight binding of an epileptic patient with a blanket. *Montin v. Gibson*, 718 F.3d 752, 754-55 (8th Cir. 2013); *see also Strutton v. Meade*, 668 F.3d 549, 558 (8th Cir. 2012) (holding that because appellant was "not physically restrained . . . *Youngberg's* 'professional judgment' standard is again inapplicable"); *Soc'y for Good Will to Retarded*

*Child., Inc. v. Cuomo*, 737 F.2d 1239, 1247 (2d Cir. 1984) (recognizing that under *Youngberg*, "involuntary commitment by itself is not undue bodily restraint").

Mr. Dalen does not allege that the Commissioner, DHS, or anyone else, placed him in physical restraints, so *Youngberg*'s professional judgment standard does not apply.

### D.    Mr. Dalen Has Not Otherwise Stated a Substantive Due Process Claim (Count VI).

Mr. Dalen also broadly alleges violation of his substantive due process rights under the Fourteenth Amendment. FAC ¶¶ 51-59. Substantive due process analysis has two primary features: (1) it only specially protects those fundamental rights and liberties which are, objectively, deeply rooted in the nation's history and tradition, and (2) courts require that the moving party provide a "careful description" of the asserted fundamental liberty interest before granting substantive due process protection. *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997). "[V]iolation of state law, without more, does not state a claim under the federal Constitution or 42 U.S.C. § 1983."[11] *Bagley v. Rogerson*, 5 F.3d 325, 328 (8th Cir. 1993

Here, Mr. Dalen has not alleged a fundamental right deeply rooted in the nation's history and tradition.[12] Nor does he carefully describe the interest at stake: instead

---

[11] It is worth noting that the state law in question was explicitly drafted to avoid creating so much as a private right of action, let alone a fundamental right. As discussed below, the MCTA provides immunity for all claims arising under the Chapter. Minn. Stat. § 253B.23, subd. 4 (protecting "all persons acting in good faith").

[12] Nor has Mr. Dalen alleged conduct that shocks the conscience. *See, e.g., Folkerts v. City of Waverly*, 707 F.3d 975, 980 (8th Cir. 2013). Conscience shocking conduct only includes "the most severe violations of individual rights that result from the brutal and inhumane abuse of official power." *White v. Smith*, 696 F.3d 740, 757–58 (8th Cir. 2012) (quotation marks omitted). It bears repeating that Mr. Dalen does not allege that his detention in the Stearns County Jail was unlawful, that while incarcerated his mental health deteriorated,

Mr. Dalen simply repeats the substantive due process claims discussed above and declares them fundamental rights deeply rooted in our nation's history.[13] FAC ¶ 54. Repackaging these claims under a single count does nothing to save them from dismissal.

Mr. Dalen has not met the first prerequisite established by *Glucksberg*: he has not shown that the right to be admitted to a state-operated mental health facility within 48 hours of being civilly committed or the right not to be detained under a lawful confinement order pending that admission is a right or liberty "objectively, deeply rooted in this Nation's history and tradition." *Washington*, 521 U.S. at 720-21 (citation omitted). He does not allege anything in "[o]ur Nation's history, legal traditions, and practices" that establishes the right to 48-hour admission as a "fundamental liberty interest." *Id.* Mr. Dalen does not even acknowledge these issues. His substantive due process arguments fail.

### E. Mr. Dalen's Substantive Due Process Claims Should Otherwise Be Dismissed Against Defendant in Her Individual Capacity.

To the extent any of the claims discussed above survive, they should be dismissed against the Commissioner in her individual capacity for two reasons.

---

that he experienced any health crisis, or that he did not receive meaningful or effective treatment for his mental illness.

[13] To the extent Mr. Dalen intended to assert a fundamental substantive due process right to treatment in an inpatient setting, there is no constitutional interest. *Bailey v. Gardebring*, 940 F.2d 1150, 1153 (8th Cir. 1991) ("We turn first to Bailey's asserted right to treatment. . . [he] simply does not have the constitutional right he claims."); *Elizabeth M. v. Montenez*, 458 F.3d 779, 788 (8th Cir. 2006) ("the Supreme Court has recognized a substantive due process right to reasonably safe custodial conditions, but not a broader due process right to appropriate or effective or reasonable treatment of the illness or disability that triggered the patient's involuntary confinement."); *Strutton v. Meade*, 668 F.3d 549, 557 (8th Cir. 2012) (same).

First, Mr. Dalen failed to allege her personal involvement: "In a civil rights action, the 'plaintiff must plead that each Government-official defendant, *through the official's own individual actions*, has violated the Constitution.'" *Geiger v. Minn. Dep't of Human Servs.*, Civ. No. 13-2140 (JRT/LIB), 2013 WL 5596599, *3 (D. Minn., Oct. 11, 2013) (emphasis in original) (quoting *Iqbal*, 556 U.S. at 676)); *Beck v. LaFleur*, 257 F.3d. 764, 766 (8th Cir. 2001) (affirming dismissal of complaint based on failure to allege personal involvement by defendants). A defendant's liability cannot be established absent "a causal link to, and direct responsibility for, the deprivation of rights." *Clemons v. Armontrout*, 477 F.3d 962, 967 (8th Cir. 2007) (quotation omitted).

Mr. Dalen raises no concrete allegation of the Commissioner's personal involvement in the Complaint. At most, she is alleged to have responsibility for setting DHS policy and ensuring DHS complies with the law. FAC ¶¶ 7-12. But allegations of "general responsibility for supervising the operations" of DHS do not "establish [the] personal involvement" necessary to support a claim for deprivation of Constitutional rights. *Ouzts v. Cummins,* 825 F.2d 1276, 1277 (8th Cir. 1987).

Second, the Commissioner is also entitled to qualified immunity because Mr. Dalen failed to allege facts that establish that she violated clearly established substantive or procedural due process rights. Qualified immunity shields "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citation omitted). Courts consider two factors: "(1) whether the facts alleged or shown,

construed most favorably to the plaintiffs, establish a violation of a constitutional right, and (2) whether that constitutional right was clearly established at the time of the alleged misconduct, such that a reasonable official would have known that the acts were unlawful." *Small v. McCrystal*, 708 F.3d 997, 1003 (8th Cir. 2013).[14] Qualified immunity is analyzed by applying an "objective legal reasonableness" standard. *Anderson v. Creighton*, 483 U.S. 635, 639 (1987).

Here, Commissioner Harpstead is entitled to qualified immunity because the gravamen of the Complaint is that Ms. Harpstead *followed* the Amended Act.[15] Similarly, Mr. Dalen does not, and cannot, allege it was apparent that complying with the law constituted a violation of his constitutional rights. To the contrary, the constitutional rights that he seeks to invoke are, as described above, not plausibly violated. However, even if they were, those allegations are grounded in the circumstances of Mr. Dalen's incarceration in Stearns County. The Commissioner for DHS does not control or oversee those conditions, and Mr. Dalen has provided no authority suggesting that the constitution somehow required her to intervene in his pretrial detention. Indeed, Mr. Dalen does not

---

[14] For a constitutional right to be clearly established, that right "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. . . [T]he unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

[15] To the extent that Mr. Dalen argues that the Commissioner's action violated rights under the MCTA before it was amended, those rights were not clearly established. The Complaint cites only mandamus orders, which do not involve federal constitutional claims. *See,* FAC at 3, fn 2 (citing *Swope v. Harpstead*, Case No. 70-CV-22-13153, Dkt. 109 (Peremptory Writ of Mandamus) and *Tokvan Ly v. Jodi Harpstead, Minn. Comm'r. of Human Services*, No. 70-CV-22-13781 (Minn. Dist. Ct. Dec. 22, 2022) (Index #65) (Mandamus Order).

allege that Commissioner Harpstead herself had actual knowledge of his civil commitment, subsequent incarceration, or DHS's efforts to place him in an appropriate treatment facility.

## IV. IF THE COURT EXERCISES SUPPLEMENTAL JURISDICTION OVER STATE LAW CLAIMS, IT SHOULD DISMISS THEM.

### A. Statutory Immunity Bars Mr. Dalen's Tort Claims.

The Commissioner enjoys statutory immunity for all claims arising under the MCTA. Section 253B.23, subd. 4, provides that "all persons acting in good faith, upon either actual knowledge or information thought by them to be reliable, who act pursuant to any provision of this chapter or who procedurally or physically assist in the commitment of any individual. . . are not subject to any civil or criminal liability under this chapter." Immunity 'provides complete immunity from suit, not simply a defense to liability.'" *Jackson on behalf of Sorenson v. Options Residential, Inc.*, 896 N.W.2d 549, 553 (Minn. Ct. App. 2017). There is no dispute that the Commissioner has acted in good faith and that Mr. Dalen's claims arise under the chapter.

Good faith actions reflect "honesty in belief or purpose." *In re Est. of Mourning*, No. A21-1241, 2022 WL 1132230, at *4 (Minn. Ct. App. Apr. 18, 2022); *see also Reimringer v. Anderson*, 960 N.W.2d 684, 690 (Minn. 2021) ("bad faith can be understood as '[d]ishonesty of belief, purpose, or motive.'"). Mr. Dalen does not allege that the Commissioner acted in bad faith in connection with her duties under the Amended Act. While Mr. Dalen freely impugns the Commissioner's support of the disputed amendment, he does not, and cannot, allege dishonesty of belief, purpose, or motive. FAC ¶¶ 6-15.

The Court of Appeals interpreted the phrase "under this chapter," to turn on whether the alleged injuries "result from anyone's failure to satisfy an obligation imposed by the

act" or implicate "the duties or rights established by the act." *Jackson on behalf of Sorenson v. Options Residential, Inc.*, 896 N.W.2d 549, 556 (Minn. Ct. App. 2017). Here, Mr. Dalen's theory of liability for all of his tort claims are built on the premise that deferring admission until medically appropriate treatment becomes available, as instructed by the Amended Act, exposes Defendant to suit. It does not. Minn. Stat. § 253B.23, subd. 4.

The Commissioner enjoys statutory immunity, and these claims must be dismissed.

**B.    Mr. Dalen Cannot State a Claim for Intentional Infliction of Emotional Distress (Count VII).**

Mr. Dalen's claim for intention infliction of emotional distress fails because his allegations do not clear the high pleading threshold for such a claim: "(1) the conduct must be extreme and outrageous; (2) the conduct must be intentional or reckless; (3) it must cause emotional distress; and (4) the distress must be severe." *Hubbard v. United Press Int'l, Inc.*, 330 N.W.2d 428, 438–39 (Minn. 1983). To be "extreme and outrageous," conduct must be "so atrocious that it passes the boundaries of decency and is utterly intolerable to the civilized community." *Id.* at 439. Minnesota courts intentionally "limit claims for intentional infliction of emotional distress to 'cases involving particularly egregious facts'" by imposing a "heavy burden" at the pleading stage. *McClendon v. Roy*, No. A19-0528, 2019 WL 6112448, at *5 (Minn. Ct. App. Nov. 18, 2019); *see also Langeslag v. KYMN Inc.*, 664 N.W.2d 860, 866 (Minn. 2003) (holding that, as a matter of law, making false police reports about plaintiff did not constitute extreme and outrageous conduct).

Mr. Dalen alleges that the Commissioner "intentionally abandoned" him to Stearns County Jail and dutifully described his continued confinement as "utterly intolerable to the

civilized community." FAC ¶ 61. However, as discussed above, Mr. Dalen does not dispute that his confinement was lawful or raise any concrete factual allegations about the conditions of that confinement. Nor do the allegations in the Complaint support the "abandonment" label: as discussed above, the Commissioner is alleged only to have ensured that medically appropriate treatment was available before admitting Mr. Dalen. Mr. Dalen does not allege any delay or lack of diligence in that process, and he does not allege that he did not receive adequate treatment while waiting for transfer, let alone that some gap in treatment caused severe distress of the sort required to support his claim.

Looking past the labels and conclusions inherent in Mr. Dalen's rhetoric, the conduct he alleges simply does not rise to the level of an atrocity beyond the bounds of decency. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" do not state a plausible claim for relief). The claim should be dismissed.

**C.    Mr. Dalen Cannot State a Claim for Negligent Infliction of Emotional Distress (Count VIII).**

Similarly, negligent infliction of emotional distress requires a threshold showing that a plaintiff "is within a zone of danger of physical impact, reasonably fears for his or her own safety, and consequently suffers severe emotional distress with resultant physical injury." *Bohdan v. Alltool Mfg., Co.*, 411 N.W.2d 902, 907 (Minn. App. 1987); *see also K.A.C. v. Benson*, 527 N.W.2d 553, 559 (Minn.1995) (acknowledging the need to maintain heightened pleading standards for the claim). The only exception to the zone-of-danger rule is when a plaintiff experiences emotional injury resulting from "a direct invasion of his rights, such as defamation, malicious prosecution, or other willful, wanton or malicious

conduct." *Id*. Mr. Dalen included the words "severe mental anguish" but does not allege facts to support the label. FAC ¶ 71. This claim must be dismissed.

### D.    Mr. Dalen Fails to State a Claim for False Imprisonment (Count IX).

The claim for false imprisonment fails first because Mr. Dalen does not allege that Commissioner played any role in his confinement.[16] A claim for false imprisonment requires a defendant's affirmative acts and awareness: "(1) words or acts intended to confine, (2) actual confinement, and (3) awareness by the plaintiff that he is confined." *Blaz v. Molin Concrete Prod. Co.*, 244 N.W.2d 277, 279 (Minn. 1976); *Thundercloud v. Schnell*, No. A21-1305, 2022 WL 759745, at *2 (Minn. Ct. App. Mar. 7, 2022), *rev. denied* (May 31, 2022) (the "intent to confine requires an affirmative act"). "[F]ailure to conduct an official [action]" that risks or results in over-incarceration is insufficient as a matter of law to state a claim for false imprisonment. *Heilman v. Courtney for Minnesota Dep't of Corr.*, No. A17-0863, 2019 WL 4008097, at *2 (Minn. Ct. App. Aug. 26, 2019).

More broadly, Mr. Dalen does not dispute that he was confined to Stearns County Jail pursuant to a lawful order. Lawful pretrial detention cannot support a claim for wrongful imprisonment. *See, e.g., Jones v. Walgreens Co.*, No. A11-1261, 2012

---

[16] The Complaint asserts (without supporting factual allegations) that "Defendant acted intentionally to confine" Mr. Dalen. FAC ¶ 74. However, as a matter of law, the Commissioner had no custody or control of Mr. Dalen until after the patient's arrival at the designated treatment facility. *See* Minn. Stat. § 253B.10, subd. 1(c). Even if Mr. Dalen's contention is that his confinement at Stearns County Jail became improper at some point, such a claim would properly be brought against an official responsible for that confinement. *See, e.g., Parada v. Anoka* County, 332 F. Supp. 3d 1229, 1246 (D. Minn. 2018). Allegations of failure to intervene do not support a claim for wrongful imprisonment. *See Heilman v. Courtney for Minnesota Dep't of Corr.*, No. A17-0863, 2019 WL 4008097, at *2 (Minn. Ct. App. Aug. 26, 2019).

WL 1658895, at *2 (Minn. Ct. App. May 14, 2012) (wrongful imprisonment based on police action must be based on inducing "the police directly to detain a suspect whom police are not otherwise permitted to detain") (citing *Smits v. Walmart*, (Minn. App. 1994). This claim must be dismissed.

### E.     Damages Are Not Available for Mr. Dalen's State Constitutional Claims.

Finally, the Court should dismiss any claims for damages under the Minnesota Constitution. "Minnesota does not have a statutory equivalent to 42 U.S.C. § 1983 allowing a direct cause of action for damages for violations of the Minnesota Constitution." *Redd v. Abla-Reyes*, No. 12-465 (MJD/JSM), 2013 WL 6057860 at *1 (D. Minn. Nov. 15, 2013). Likewise, the Court should dismiss damages claims under the United States Constitution to the extent they are brought against DHS or the Commissioner in her official capacity.[17] Neither state agencies or state officials sued in their official capacities are "persons" within the meaning of section 1983 and because the State has not waived its immunity from section 1983 claims, a state and its officers acting in their official capacity may not be sued under section 1983. *Will v. Michigan Dep't. of State Police*, 491 U.S. 58, 70-71 (1989).

### CONCLUSION

For the foregoing reasons, Defendant respectfully asks the Court to dismiss Plaintiffs' Complaint in its entirety with prejudice.

[Signature on Next Page]

---

[17] As described above, Mr. Dalen has failed to allege personal involvement by the Commissioner sufficient to state any individual capacity claim.

Dated: July 19, 2023

Respectfully submitted,

KEITH ELLISON
Attorney General
State of Minnesota

**s/ Leaf McGregor**

LEAF MCGREGOR
Assistant Attorney General
Atty. Reg. No. 0389140

AARON WINTER
Assistant Attorney General
Atty. Reg. No. 0390914

445 Minnesota Street, Suite 1400
St. Paul, Minnesota 55101-2131
(651) 757-1258 (Voice)
(651) 282-5832 (Fax)
leaf.mcgregor@ag.state.mn.us
aaron.winter@ag.state.mn.us

*Attorneys for Defendant*

|#5522424-v3