**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Kyle Jerome Dalen, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>Jodi Harpstead, Commissioner of the Minnesota Department of Human Services, *in her individual and official capacities*,<br><br>Defendant. | Case No. 23-cv-1877 (ECT/ECW)<br><br>**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** |

## INTRODUCTION

Plaintiff Kyle Jerome Dalen ("Dalen") moves the Court for an Order preliminarily enjoining the application of paragraph (e) of Minn. Stat. § 253B.10, subd. 1 (the "Amendment") until the constitutionality of the amended statute can be resolved.

## BACKGROUND

Prior to May 24, 2023, the Minnesota Commitment and Treatment Act ("MCTA") mandated that the Commissioner of the Minnesota Department of Human Services (the "Commissioner") admit criminal defendants adjudged mentally incompetent (and then committed) to a state-operated treatment program within 48 hours of the commitment order. Minn. Stat. § 253B.10, subd. 1(b) (2022); *see Ly v. Harpstead*, ECF No. 23-1, at 10; *Swope v. Harpstead*, ECF No. 23-1, at 9.

Although this clear mandate existed, the Commissioner routinely refused to transfer these individuals for days, weeks, or months beyond the 48-hour period following their

commitment order as required by the statute. *See*, *e.g., Ly v. Harpstead* at 5; *Swope v. Harpstead* at 2. These refusals to timely transfer committed people led to complaints from sheriffs, rebukes from judges, and lawsuits from individuals who remained confined in jails long after the statutory time expired. *Id.*; ECF No. 10 ("FAC") at ¶ 6.

In the face of these lawsuits and related complaints, the Commissioner sought relief from the Minnesota legislature. On May 15, 2023, Attorney General Ellison testified before the legislature that the law should be amended so the 48-hour requirement is triggered not when an individual is committed, but when the Commissioner determines that a "medically appropriate bed" is available. *See* Minn. Stat. § 253B.10, subd. 1(e) (2023). Attorney General Ellison testified that the Amendment would give the Commissioner "more flexibility" and "make it such that [they] are not the target of the vast amount of litigation" they were facing. *SF2934 - Public Testimony on the Human Services Finance Omnibus Bills, before the Senate Conference Committee*, 93d Leg. Sess., at 8:20 (hereinafter, "Amendment Testimony").[1] This proposed Amendment passed as part of a broader omnibus bill and took effect on May 24, 2023.

The result is a statute that now permits the indefinite incarceration of individuals deemed mentally incompetent and who have not been convicted of any crime subject only to the unilateral discretion of the Commissioner. Plaintiff seeks a preliminary injunction to prevent the enforcement of the Amendment pending a full trial on the merits because the

[1] *See* https://mnsenate.granicus.com/player/clip/11554?view_id=1&redirect=true&h=a0c8d980f3d78166ee14e8d0e6b1895d.

Amendment is unconstitutionally vague, violates the separation of powers doctrine, and violates Mr. Dalen and the class members' due process rights.

## ARGUMENT

"[T]he primary function of a preliminary injunction [is to] preserv[e] the status quo until the district court has an opportunity to grant full effective relief." *Tumey v. Mycroft AI, Inc.*, 27 F.4th 657, 664 (8th Cir. 2022).

> Whether a preliminary injunction should issue involves consideration of (1) the treat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and, (4) the public interest.

*Dataphase Systems, Inc. v. C L Systems, Inc.*, 640 F.2d 109, 114 (8th Cir. 1981). Of these four factors, the likelihood of success on the merits is the most significant, but "no single factor is determinative." *Id.*; *see Baker Elec. Co-op., Inc. v. Chaske*, 28 F.3d 1466, 1472 (8th Cir. 1994) ("No single factor in itself is dispositive; in each case all of the factors must be considered to determine whether on balance they weigh towards granting the injunction." (quoting *Calvin Klein Cosmetics Corp. v. Lenox Labs., Inc.*, 815 F.2d 500, 503 (8th Cir. 1987)). At bottom, the analysis seeks to determine "whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." *Dataphase*, 640 F.2d at 113.

### A. Although Plaintiff Has Now Been Transferred, He has standing to bring this Motion.

Generally, to seek injunctive relief:

> a plaintiff must show that he is under threat of suffering injury in fact that is concrete and particularized; the threat must be actual and imminent, not

> conjectural, or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury.

*Missourians for Fiscal Accountability v. Klahr*, 830 F.3d 789, 794 (8th Cir. 2016). Because Mr. Dalen has been admitted to a treatment facility, Defendants will contend the issue is now moot. But it is not uncommon for individuals to be committed more than once under the MTCA. Mr. Dalen, for example, has already been committed on two separate occasions. If the Amendment could only be challenged by individuals who currently are awaiting admission on a commitment order, their claims may never be heard because they likely will be transferred before their challenge is resolved on the merits. *See e.g., Whitfield v. Thurston*, 3 F.4th 1045, 1047 (8th Cir. 2021) ("[A] case that would otherwise be moot is not if (1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subjected to the same action again." (quotation omitted)); *see also State v. Brooks*, 604 N.W.2d 345, 347 (Minn. 2000).

The Supreme Court has recognized that: even though, "[n]ormally[,] a class action would be moot if no named class representative with an unexpired claim remained at the time of class certification," there is good reason to allow such class actions to proceed in instances just like this. *United States v. Sanchez-Gomez*, 584 U.S ___, ___ 138 S.Ct. 1532 (2018). In *Sanchez-Gomez*, the Supreme Court made clear:

> As we explained, pretrial custody was inherently temporary and of uncertain length, such that we could not determine that any given individual, named as plaintiff, would be in pretrial custody long enough for a district judge to certify the class. At the same time, it was certain that there would always be

> some group of detainees subject to the challenged practice. Given these circumstances, the Court determined that the class action could proceed.

*Id.* (citing *Gerstein v. Pugh*, 420 U.S. 103 (1975)) (quotations omitted). Here too, any single committed individual can be admitted to treatment from jail before this case reaches a decision on the merits, but there will always be more awaiting placement. *See* First Amended Class Action Complaint ("FAC"), ECF No. 10 at ¶12 ("Upon information and belief, at any given time there are between 40 and 60 individuals . . . awaiting transfer....").

**B. Plaintiff is likely to succeed on the merits.**

Plaintiff already briefed the merits of his claims in opposition to Defendant's Motion to Dismiss and because the two motions are scheduled to be argued together, will not repeat those arguments here. *See e.g.*, Pltfs.' Mem. in Opp. to Mot. to Dismiss, ECF No. 22 (hereinafter, "Pltfs.' MTD Mem.") While the 12(b)(6) standard and the likelihood-of-success standards technically differ, Plaintiff believes that the issues present are "substantially intertwined" and that his arguments regarding the motion to dismiss not only state a claim to relief that is plausible on its face, but also demonstrate that Plaintiff is likely to succeed on the merits of all of his claims. *Oglala Sioux Tribe v. United States*, No. 5:22-CV-05066-RAL, 2023 WL 3606098, at *2 (D.S.D. May 23, 2023). Thus, for the reasons discussed in Pltfs.' MTD Mem., Plaintiff is likely to succeed on the merits, which is the most significant injunction factor. *Dataphase*, 640 F.2d at 113.

Even without this factor, the remaining factors are so strongly in Plaintiff's favor and so uniquely pertinent in this case that justice requires maintenance of the status quo. *Planned Parenthood Minnesota, N. Dakota, S. Dakota v. Rounds*, 530 F.3d 724, 731 (8th

Cir. 2008) ("[W]here the balance of other factors [besides likelihood of success] tips decidedly toward plaintiff a preliminary injunction may issue if movant has raised questions so serious and difficult as to call for more deliberate investigation." (quotation omitted)); *Dataphase*, 640 F.2d at 113 ("[W]here the movant has raised a substantial question and the equities are otherwise strongly in his favor, the showing of success on the merits can be less.").

**C.     Plaintiff is likely to suffer irreparable harm without an injunction.**

The Court should consider whether there is a threat of irreparable harm to the Plaintiff if injunctive relief is not granted and that such harm is not compensable by money damages. *Doe v. LaDue*, 514 F. Supp. 2d 1131, 1135 (D. Minn. 2007). "Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." *Grasso Ents., LLC v. Express Scripts, Inc.*, 809 F.3d 1033, 1040 (8th Cir. 2016).

As described in the FAC, the Amendment removes any time limit by which the Commissioner must admit committed individuals into treatment—leaving the matter entirely to the Commissioner's discretion because "medically appropriate bed" can mean a variety of things depending on the circumstances. Individuals committed and not transferred prior to the Amendment were deprived of their property interest in being admitted within 48 hours of commitment without due process, and those who have or will be committed after the effective date of the Amendment suffer continuous and ongoing constitutional harms because of their indefinite imprisonment. Although rooted in

constitutionally protected rights, the injuries Plaintiffs will suffer are far more than legal or theoretical.

First, "unconstitutionally imprisoning a human being in a jail cell in violation of her constitutional rights is undoubtedly an irreparable harm to her body and mind." *Welchen v. Harris*, No. 2:16-cv-185-TLN-KJN, 2016 WL 430517, at *2 (E.D. Cal. Feb. 4, 2016). As a result of the Amendment, Plaintiff suffered loss of additional freedom, liberties, medical treatment, and basic comfort to which he was entitled, and suffered mental anguish and mental health problems that can never be fully compensated with money damages.

Not only will Plaintiff suffer delay in proper medical treatment, but the consequences of a lack of such treatment, in tandem with the conditions of a jail, are uniquely injurious to individuals with mental illnesses like Plaintiff and the proposed class. In 2013, in support of the bill that would become the 48-hour law, Judge Jay Quam testified before the Minnesota Senate:

> Jail is a bad place for people with mental illness . . . Jail is an incredibly toxic environment for just about everyone, but especially someone with mental illness. The longer they go, the worse they get. . . . And what is extremely unfortunate is that, some folks, they get worse and they can't get better. They reach a point of no return. So the longer they go, the more there is a risk that there is going to be some irreversible damage to that person simply from sitting in a jail where they don't belong.

*SF647 - Testimony Before the Senate Judiciary Committee*, 88th Leg. Sess., at 1:21:51, https://www.lrl.mn.gov/media/file ?mtgid=880288 (hereinafter, "Senate Testimony") at 1:21:51.

Plaintiff, and other members of the class, also suffer the indignity, mental anguish, and stigma from the fact that the only reason they must spend this extra time in state

custody and suffer this extra harm is because they have mental illnesses—illnesses which already negatively impact their lives, and which are outside of their control. Continuing his testimony, Judge Quam commented that what "is the least excusable" is that "people with a mental illness who come into the criminal justice system typically spend far longer in jail *because* of the mental illness than anyone who comes in for the same reason but doesn't have a mental illness." Senate Testimony at 1:23:10.

This is because the other people that are charged with these crimes would be released on bail or other conditions pending trial. Or the ultimate resolution of the charges would mean less jail time than the people with mental illness end up serving awaiting transfer to the state healthcare facilities. These are exactly the injustice that the 48-hour law address when it was enacted initially. Not only does the Amendment remove the 48-hour requirement, but it gives the Commissioner unlimited discretion to keep any individual in jail and out of treatment. Without an injunction, Plaintiffs will suffer these serious and irreparable injuries.

**D.     The balance of equities tips in Plaintiffs' favor.**

A brief analysis of the balance of equities clearly establishes that this *Dataphase* factor also weighs heavily in Plaintiff's favor. On one hand, the harm Plaintiff and class members face are substantial injuries to their most fundamental constitutional rights – due process and liberty. On the other, maintenance of the status quo by way of enjoining enforcement of the Amendment exposes the Commissioner to, at most, administrative burdens that it should have long ago corrected.

As this case clearly demonstrates, when the Commissioner finds compliance with the law too burdensome, she can draft and propose amended legislation and call upon the Minnesota Attorney General to lobby in favor of that legislation. Plaintiff and class members, on the other hand, do not have the mental stability or the legal competence to petition and lobby the legislature, even when it is their rights and mental health on the line. Plaintiff and class members' rights are continually and consistently violated, such that it irreparably damages their mental health and constitutional rights. The power disparity between the parties here to advocate for and pursue their respective interests is manifest in the very circumstances that give rise to this lawsuit. The equities here clearly tip in Plaintiff's favor.

**E. The injunction Plaintiff seeks is in the public interest.**

The 48-hour law was proposed and passed into law in 2013 for good reason: "[A] defendant has a constitutional right 'not to be tried while legally incompetent,' and . . . a State's 'failure to observe procedures adequate to protect a defendant's right not to be tried or convicted while incompetent to stand trial deprives him of his due process right to a fair trial.'" *Medina v. California*, 505 U.S. 437, 449 (1992) (quoting *Drope v. Missouri*, 420 U.S. 162, 173 (1975)). Minnesota Rule of Criminal Procedure 20, in tandem with the MCTA, provides the procedure by which a criminal defendant's mental competency is assessed, accounted for, and pursued. When a defendant is found to be not competent to stand trial, Rule 20 and the MCTA direct the court to commit the defendant to DHS for treatment. Prior to enactment of the 48-hour law, however, there were no laws or rules

regulating what steps DHS must take, and when it must take them once a defendant was committed to its custody.

The pre-48-hour law process resulted in obvious problems. In support of the 48-hour law, Hennepin County Sheriff Rich Stanek testified before the Minnesota House of Representatives that "those with mental illness are spending too much time in our local jails." *Testimony of Rich Stanek, Sheriff of Hennepin County, Minn. House, Hearing on H.F. 1556 and H.F. 1557 before the House Judiciary and Finance Committee*, 88th Minn. Leg., Reg. Sess., at 6:04 (March 19, 2013) (hereinafter, "House Testimony"), https://www.house.mn.gov/hjvid/88/880229; *see also* Senate Testimony at 55:55–1:46:05. The House Testimony and Senate Testimony thoroughly encapsulate the public interest served by the former 48-hour law, and therefore the disservice to that interest in allowing the Amendment to stand during the pendency of this action.

This injunction would act to serve the public interest, first, by promoting public safety. In his testimony, Sheriff Stanek continued,

> By having firm deadlines by which inmates are moved out of the jail to a treatment facility . . . we believe this will have a positive impact on public safety, and when I talk about 'we' I'm talking about the 87 sheriffs elected to represent the citizens of Minnesota.
>
> . . .
>
> The jail does not provide treatment to those who are mentally ill and in need of that treatment. Instead, they wait, and wait, and wait in jail. They become more disenfranchised . . . . They become more vulnerable to the other inmates . . . sometimes more violent towards the staff.

House Testimony at 8:26. In support of the Senate bill, Judge Jay Quam testified that people often think "jail is probably a really good place to put those people to keep all of us

safe, and of course the truth couldn't be anything further from that. The vast majority are not dangerous. They really only become dangerous when they don't get the treatment . . . ." Senate Testimony at 1:21:25.

Second, "people who suffer from mental illness . . . require far more resources than the average inmate in our jails." House testimony at 5:25. This increased cost is disproportionately carried by the individual counties housing individuals in their jails, rather than by the state. OFFICE OF THE LEGISLATIVE AUDITOR, MENTAL HEALTH SERVICES IN COUNTY JAILS, at 6 (Mar. 2016), https://www.auditor.leg.state.mn.us/ped/pedrep/mhjails.pdf.

Finally, an injunction would serve the public interest in government officials' acting in good faith and complying with the law. *See United States v. Jacobo-Zavala*, 241 F.3d 1009, 1013 (8th Cir. 2001) (noting that there is a "manifest public interest" in ensuring that government attorneys discharge their duties in good faith); *see also Maxam v. Lower Sioux Indian Cmty.*, 829 F. Supp. 277, 284 (D. Minn. 1993) ("[T]here is a public interest in fostering respect for the law and compliance with the laws of our country."); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 576 (1992) (noting a "public interest in proper administration of the laws").

Prior to the Amendment, the Commissioner consistently took the position in numerous cases that it was not violating the 48-hour law, her counsel representing to several courts that she interpreted the law to mean admission was required 48 hours from the time a medically appropriate bed was identified. *See e.g.*, Pltfs.' MTD Mem. at 5 n.2. In support of the Amendment, however, DHS's counsel testified before the Minnesota

Senate that DHS knew that "under the current law, it is required that the department of human services transfer inmate[s] within 48 hours of a civil commitment" and that DHS was "not meeting the requirements of the 48-hour law." *Id.* at 5 n.3. Indeed, when discussing an amendment to the 2013 bill that would become the 48-hour law, Senator Julianne Ortman commented that "there was a little bit of conversation about whether the 48 hours should include or exclude weekends and holidays, and I'm grateful that the Commissioner of the Department of Human Services has agreed that 48 hours will mean 48 hours." *SF647 - Testimony Before the Finance Committee*, 88th Leg. Sess., at 1:09:45 (hereinafter, "Finance Testimony"), available at https://www.lrl.mn.gov/media/file?mtgid=880350.

DHS also represented through counsel that it "cannot meet the resource needs [of compliance with the 48-hour law] in an instant," and the Amendment would give DHS short-term flexibility to meet those resource needs in the long term. Amendment Testimony at 8:20. However, in 2013, when asked, "is it the position of the Department of Human Services that with this amendment there will be no fiscal cost?" DHS's legislative liaison testified "yes, that is our position." Finance Testimony at 1:11:19. And even if the resources needed to comply with the 48-hour law changed after its enactment, Defendant has had over a decade to take steps to meet those needs and failed to do so. Despite consistent non-compliance with the 48-hour law, DHS only sought to change the law after it faced sufficient scrutiny for those violations to burden its attorneys' office—not when it determined it lacked the resources to comply. Amendment Testimony at 8:45 (advocating

for a change in the law to "make it such that we're not the target of the vast amount of litigation that we're facing at this very moment").

Whatever seeming legitimacy the legislative process may have afforded the passage of the Amendment, it is apparent to the public that the Amendment is purely the result of DHS and the Commissioner's self-serving bill and lobbying efforts, and that it came at the sharp expense of the most vulnerable and too-often disregarded members of the public. *See generally*, Louis Krauss, *Inmates Sue State Over Delays in Treatment Center Transfers.*, STAR TRIBUNE, (Aug. 6, 2023, 8:51 PM), https://www.startribune.com/mentally-ill-inmates-sue-minnesota-hospital-jail-transfer-48-hour-rule/600295288; *County attorneys, sheriffs say 'last-minute' change will gut 48-hour law*, KSTP-TV (last updated May 15, 2023, 10:42 PM), https://kstp.com/5-investigates/county-attorneys-sheriffs-say-last-minute-change-will-gut-48-hour-law.

Until the validity of the Amendment can be determined in full, an injunction maintaining the status quo by prohibiting enforcement of the Amendment serves the public interest.

## CONCLUSION

On whole, Plaintiffs are likely to succeed on the merits of their case, and the remainder of the *Dataphase* factors in this unique case weigh so heavily in favor of Plaintiffs that an injunction preserving the status quo pending an outcome on the merits is warranted. For these reasons, Plaintiffs respectfully request that the Court enter a temporary injunction enjoining enforcement of the Amendment.

Dated: September 11, 2023

**GUSTAFSON GLUEK PLLC**

/s/Daniel E. Gustafson
Daniel E. Gustafson (#202241)
David A. Goodwin (#386715)
Anthony J. Stauber (#401093)
Joseph E. Nelson (#402378)
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Telephone: 612-333-8844
Fax: 612-339-6622
dgustafson@gustafsongluek.com
dgoodwin@gustafsongluek.com
tstabuer@gustafsongluek.com
jnelson@gustafsongluek.com

**JASPERS, MORIARTY & WETHERILLE, P.A.**
Kevin J. Wetherille (#033036X)
James P. Conway (#0391044)
206 Scott Street
Shakopee, MN 55379
(952) 445-2817

**THRONDSET MICHENFELDER, LLC**
Jason Gustafson (#0403297)
One Central Avenue West
St. Michael, MN 55376, Suite 101
Tel: (763)-515-6110
Cell: (612)-889-0341

**FREMSTAD LAW**
Hannah L. Scheidecker (#0401987)
3003 32nd Ave. S., Ste. 240
Fargo, ND 58103
(701) 478-7620
hannah@fremstadlaw.com

*Attorneys for Plaintiff and the Proposed Class*