UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Kyle Jerome Dalen, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>Jodi Harpstead, Commissioner of the Minnesota Department of Human Services, *in her individual and official capacities*,<br><br>Defendant. | Case No. 23-cv-1877 (ECT/ECW)<br><br>**PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** |

## INTRODUCTION

Defendant's opposition to Plaintiff's Motion for Preliminary Injunction waxes on about why it admittedly could not comply with the "48-hour" rule that was in effect when Plaintiff was awaiting mental health treatment. This argument cannot succeed unless the Court accepts Defendant's position that "48 hours" means "48 hours after [DHS] decides it has appropriate resources available to comply with the statute." That statutory construction finds no legal or factual support. The Court should reject it. *See Kaufmann v. Siemens Med. Solutions USA, Inc.*, 638 F.3d 840, 846 (8th Cir. 2011) ("A question of statutory interpretation is always a question of law . . . ."); *In re Civ. Commitment of Ince*, 847 N.W.2d 13, 20 (Minn. 2014) (applying the principle that matters of statutory interpretation are legal questions).

As explained below, Defendant's current interpretation of the 48-hour rule is contrary to the position it has publicly taken in the past, has been explicitly rejected by every court to consider it, and belies the need for the amendment were it true. This Court now should reject this argument and construe the 48-hour statute as first enacted and the amendment's application as applying to the future not the past. Because Plaintiff demonstrates that a preliminary injunction should be entered, Plaintiff's motion should be granted pending a full trial on the merits.

## ARGUMENT

**I.  Defendant's Inability to Comply with the Pre-Amendment "48-Hour" is Irrelevant to Plaintiff's Current Motion.**

Most of Defendant's opposition lays out in detail her excuses for failing to comply with the earlier 48-hour rule. She cites (in the form of several declarations) insufficient facility capacity, insufficient staff and staffing difficulties, and a lack of funding from the legislature that could be used to remedy the mental health resource shortages that have persisted for years. That argument forms no basis to deny Plaintiff's current motion.

But even if it were a legitimate defense, it is legally incorrect because it is settled law that states may neither abridge nor ignore the constitutional rights of their citizens simply because funding has not been appropriated to meet those constitutional obligations. *Watson v. City of Memphis*, 373 U.S. 526, 537 (1963) ("[I]t is obvious that vindication of conceded constitutional rights cannot be made dependent upon any theory that it is less expensive to deny than to afford them."); *see also Gates v. Collier*, 501 F.2d 1291, 1319 (5th Cir. 1974) (collecting cases); *Liddell v. Missouri*, 731 F.2d 1294, 1320 (8th Cir. 1984)

2

("If we accepted this argument, violators of the Constitution could avoid their remedial responsibility through manipulation of their budgets, leaving victims without redress. Simply put, parsimony is no barrier to a constitutional remedy."); *Harris v. Champion*, 15 F.3d 1538, 1562–63 (l0th Cir. 1994) (noting that neither lack of funding for public defender system nor mismanagement of resources by public defender constitute acceptable excuses for lengthy delays in litigating direct criminal appeals); *Williams v. Bennett*, 689 F.2d 1370, 1387-88 (11th Cir. 1982) (making clear that "Defendants clearly may not escape liability [for a constitutional violation] solely because of the legislature's failure to appropriate requested funds"); *Ross v. Sandoval*, No. 217CV02386APGGWF, 2018 WL 1977259, at *10 (D. Nev. Mar. 27, 2018) ("[L]ack of funds for facilities cannot justify an unconstitutional lack of competent medical care and treatment for inmates." (quoting *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 705 (11th Cir. 1985)).

One reason a state government's unconstitutional conduct may not be excused by a lack of funding is that even where an agency or department is incapable of obtaining necessary funding from the legislature, courts may order that such apportionments be made. In *Welsch v. Likins*, the district court had earlier issued an order determining "that unconstitutional practices and conditions existed at the Cambridge State Hospital . . . and directing that affirmative steps be taken to bring the institution up to a standard of constitutional acceptability." 550 F.2d 1122, 1124 (8th Cir. 1977). The defendant failed to comply with that court order, blaming a lack of funding. *Id.* The district court went on to enjoin the defendant and the Eighth Circuit affirmed, observing that:

> the defendants do not argue, nor could they argue successfully, that a federal district court acting within the framework of a suit brought under 42 U.S.C. s 1983 does not have the power to correct unconstitutionalities by means of an injunction and to include in its decree affirmative requirements which may be onerous and which may require the expenditure of public money that otherwise would not have been spent or would have been spent for something else.

*Id.* at 1128.

Here, Defendant has the ability and responsibility to request the funding necessary for its programs but has failed to do so. *See* [Glancy Decl., ECF No. 37 at ¶¶ 19–21].[1] Defendant makes no argument that the Amendment applies retroactively, although its forward application as of the date of the Amendment essentially creates retroactive application under the facts because Defendant applies the Amendment to people who Defendants failed to timely transfer under the pre-Amendment 48-hour rule. That is exactly the point of Plaintiff's motion: applying the statute to Dalen deprives him of a constitutionally protected liberty interest. *See Chairse v. Dep't of Hum. Servs.*, No. 23-CV-355 (ECT/ECW), 2023 WL 5984251, at *4 (D. Minn. Sept. 14, 2023); *see also Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) ("The liberty of a parolee enables him to do a wide range of things open to persons who have never been convicted of any crime. . . . Subject to the conditions of his parole, he can be gainfully employed and is free to be with family and friends and to form the other enduring attachments of normal life. Though the State

---

[1] Defendant's resource constraints are her responsibility to address, and even if she has made earnest yet unsuccessful efforts to remedy constraints, a lack of funding still cannot legally justify violating citizens' civil rights. Accordingly, the Court should afford no weight to Defendant's proffered excuses.

properly subjects him to many restrictions not applicable to other citizens, his condition is very different from that of confinement in a prison.").

## II. Plaintiff Has Standing to Bring This Motion for Several Reasons Including that Defendant is Applying the Amendment Retroactively.

Plaintiff has standing for several reasons. First, he was harmed by the application of the pre-Amendment 48-hour rule. Second, because Defendant is now applying the Amendment retroactively, he was harmed by its application to him in two ways—it kept him in jail longer and it deprived him of his vested constitutional right to liberty resulting from admission to a treatment program. *See Chairse*, 2023 WL 5984251, at *4. In addition, as set forth in Plaintiff's initial memorandum—and as highlighted by the facts in this case—the timing of the conduct here suggests it would always be moot but likely to reoccur. *See Whitfield v. Thurston*, 3 F.4th 1045, 1047 (8th Cir. 2021); *see also State v. Brooks*, 604 N.W.2d 345, 347 (Minn. 2000).

To avoid the conclusion that Defendant applied the Amendment to Plaintiff (after all, she admits Dalen was not transferred within 48 hours of commitment), and because there is not a peep in the Amendment about retroactive application, Defendant now claims that the Amendment merely "clarified" the law. S*ee In re Individ. 35W Bridge Litig.*, 806 N.W.2d 820, 828 (Minn. 2011) ("Statutes are generally not construed to apply retroactively, but this presumption may be overcome by language that clearly and manifestly demonstrates legislative intent that the statute apply retroactively.").

Plaintiff has already thoroughly explained why this assertion lacks merit. First, before enactment of the pre-Amendment statute, the then Commissioner admitted that "48

5

hours" meant "48 hours." *See SF647 - Testimony Before the Finance Committee*, *88th Leg. Sess.*, at 1:09:45, available at https:/www.lrl.mn.gov/media/file?mtgid=880350 (after discussion of whether weekends and/or holidays counted, Senator Ortman commented that "I'm grateful that the Commissioner of the Department of Human Services has agreed that 48 hours will mean 48 hours.").

In addition, Attorney General Ellison made no mention of clarifying the statute during his testimony supporting the Amendment. Instead, he made clear that the reason for the Amendment was that the State could not comply with the law and needed relief from "the vast amount of litigation that we're facing at this very moment." *See* Amendment Testimony at 8:45.

This is consistent with the Scott County Court's earlier finding that the law meant 48 hours and not anything in addition.[2] If the State wanted to clarify the meaning of when that 48-hour period started, it obviously knew how to say the words to clarify and not

---

[2] As the *Ly v. Harpstead* court put it before the Amendment was even proposed:

> The Commissioner's argument that the timeline begins at the time a "medically appropriate bed becomes available" is unpersuasive, self-serving, and disingenuous. Allowing the commissioner to withhold transfer until a "medically appropriate bed is available" would add language to the statute that is not present by its express terms, and this additional language would defeat the entire priority admission purpose of the statute rendering it absurd and unjust. Beyond this, reading the statute to allow an indefinite period of time to elapse before transfer and treatment begins would operate to allow an unconstitutional result; preventative detention of mentally ill persons without treatment.

[ECF No. 23-1 at 9 (citations omitted)].

6

amend the statute. In finding that the statute provided protectible rights, this Court acknowledged as much in *Chairse. Chairse*, 2023 WL 5984251, at *4.

For the reasons stated above and in Plaintiff's opening memorandum, he has standing to seek injunctive relief with respect the Amendment.

### III. Plaintiff Has Satisfied the *Dataphase* Factors.

#### A. Plaintiff Has Made a Sufficient Showing of Success on The Merits.

Plaintiff briefed the merits of his claims in opposition to Defendant's motion to dismiss. And although the standard may not be identical, those discussions demonstrate why Plaintiff satisfies the *Dataphase* factors. In addition, because Defendant put undisputed facts (legal admissions) into the record, the entire record can be considered. *See Rud v. Johnston*, No. CV 23-0486 (JRT/LIB), 2023 WL 2600206, at *4 (D. Minn. Mar. 22, 2023) (finding that "[t]hough the Eighth Circuit has not explicitly required sworn affidavits in support of motions for TROs or preliminary injunctions, other courts have held that the party seeking injunctive relief must present evidence beyond allegations in the complaint." (citing *Palmer v. Braun*, 155 F. Supp. 2d 1327, 1331 (M.D. Fla. 2001), aff'd, 287 F.3d 1325 (11th Cir. 2002) ("To carry its burden, a plaintiff seeking a preliminary injunction must offer proof beyond unverified allegations in the pleadings.")); *see also* 11A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2949 ("Evidence that goes beyond the unverified allegations of the pleadings and motion papers must be presented to support or oppose a motion for a preliminary injunction. Affidavits are appropriate on a preliminary-injunction motion and typically will be offered by both parties."). The *Rud* Court found that the plaintiff had put forth sufficient evidence for the

7

Court to consider his preliminary injunction motion, including, among other items: a Minnesota Commitment Appeal Panel's finding of fact that the MSOP failed to transfer a patient in accordance with a CAP order for transfer; an affidavit from Nancy A. Johnston pertaining to the same decision; an Appeal Panel decision finding the MSOP in contempt because it had the ability to comply with a patient's transfer order but exercised bad faith in failing to comply with the order; and two Minnesota state trial court decisions finding that a patient adequately alleged a due process violation after the MSOP failed to transfer him, but ultimately dismissing the case because defendants were entitled to qualified immunity. *Id*. The *Rud* Court went on to find that although the plaintiff did not submit any affidavits unique to the particular action, there was certainly enough evidence for the Court to properly analyze the plaintiff's request for preliminary injunction. *Id.* The same is true here.

### 1. Because this Amendment Was Not Subject to the Full Play of the Democratic Process, the Heightened Standard Should Not Apply.

Before discussing the *Dataphase* factors, Defendant argues that because the injunction seeks to enjoin enforcement of a duly adopted statute, the Court must apply a more rigorous "likely to prevail" standard as opposed to a "fair chance of succeeding" standard to Plaintiff's motion. Defendant argues that this threshold showing must be satisfied before evaluating the remaining factors.

On this point, Defendant also argues that this heightened standard means that Plaintiff's response to Defendant's motion to dismiss is insufficient to establish this *Dataphase* factor. [ECF No. 32 at 17]. Although Plaintiff does not dispute that Rule 12

motions impose a standard that is different from either standard for a motion for injunction, there is no reason that the arguments in opposition to Defendant's motion to dismiss cannot be applied to the resolution of the *Dataphase* factors. Defendant suggests the same thing in her brief. *See* [ECF No. 32 at 22 n.3 (Defendant referring to her motion to dismiss "for a more thorough explanation of the reasons these claims fail")].

Even more confusing is Defendant's comment that the "deference" given "in the context of a motion to dismiss" does not apply here. [ECF No. 32 at 17 (describing this as "[p]erhaps most significant[]")]. Defendant appears to be referring to the motion to dismiss standard, under which a court takes the *facts* alleged in the *complaint* as true. *See Timeless Bar, Inc. v. Illinois Cas. Co.*, No. 22-cv-1685 (KMM/LIB), 2022 WL 16836198, at *2 (D. Minn. Nov. 9, 2022). But Defendant does not dispute Plaintiff's factual allegations (there are simply no factual disputes), and a court does not give "deference" to legal arguments on the merits of claims. *Id.* Plaintiff maintains that he has made an adequate showing of success on the merits regardless of the standard applied.

Second, the law on the "heightened standard" is not as black-letter as Defendant makes it seem. In *Planned Parenthood Minnesota, North Dakota, South Dakota v. Rounds*, the Eighth Circuit concluded:

> [D]istrict courts should still apply the familiar "fair chance of prevailing" test where a preliminary injunction is sought to enjoin something other than government action based on presumptively reasoned democratic processes. Only in a case such as this one, where a preliminary injunction is sought to enjoin the implementation of a duly enacted state statute, must district courts make a threshold finding that a party is likely to prevail on the merits.

530 F.3d 724, 732–33 (8th Cir. 2008). Contrary to Defendant's assertion, however, this does not mean that the heightened standard per se applies in every case seeking to enjoin conduct pursuant to a statute. Rather, courts "must evaluate whether 'the full play of the democratic process' was involved in the creation and implementation of these laws and then determine the applicability of the elevated standard." *Law v. Gast*, 641 F. Supp. 3d 580, 598 (S.D. Iowa 2022) (quoting *D.M. by Bao Xiong v. Minnesota State High Sch. League*, 917 F.3d 994, 1000 (8th Cir. 2019)) (continuing: "Although Courts are tasked with examining the process by which laws were enacted, state and federal statutes are the output of *presumptively* reasoned democratic processes." (emphasis added) (quotations omitted)).

For example, in *Richland/Wilkin Joint Powers Authority v. United State Army Corps of Engineers*, the Eighth Circuit upheld a district court's order enjoining government conduct pursuant to a federal statute, despite the lower court applying the more permissive "fair chance of prevailing" test. 826 F.3d 1030 (8th Cir. 2016). The Eighth Circuit elected not to delineate the boundaries, if any, between enjoining a statute and enjoining conduct authorized by a statute.[3] Rather, the court observed that "where an injunction is sought to stop anything other than 'government action based on presumptively reasoned democratic process,' the familiar 'fair chance of prevailing' test will still apply." *Id.* The court held that "the district court was well within its discretion when it determined that the process

---

[3] To the extent that the Court finds the distinction meaningful in this case, Plaintiff notes that he has alternately requested an order "preliminarily enjoining the application of" the Amendment, "enjoining enforcement of the Amendment," and "prevent[ing] the enforcement." [ECF No. 28 at 1, 2, 14].

10

involved in the project's approval, including the [statute], made the 'fair chance of prevailing' standard more appropriate." *Id.* at 1041.

Defendant lauds the democratic process underlying the Amendment by suggesting that the legislature held 13 hearings on the Amendment.[4] [ECF No. 32 at 24 n.6]. This assertion lacks factual support. Although the Amendment may have been legally enacted in that it was passed by the legislature and signed by the Governor, that does not mean that the law necessarily received "the full play of the democratic process in its creation and implementation." *Gast*, 641 F. Supp. 3d at 598 (quoting *D.M. by Vao Xiong*, 917 F.3d at 1000).

The omnibus bill here, which included the Amendment, was first introduced to the Minnesota Senate on March 15, 2023. SF 2934, *Office of the Revisor of Statutes*, https://www.revisor.mn.gov/bills/bill.php?b=senate&f=SF2934&ssn=0& y=2023. The first change to this bill reflecting a proposed amendment to Minn. Stat. § 253B.10 does not appear until the first unofficial engrossment was posted on April 21, 2023. *Id.* at Art. 3, Sec. 17.[5] The Amendment does not appear in any of the official listed "actions" on the Senate File until the conference committee report on May 19, 2023. Of

---

[4] In one instance, Defendant outright asserts that "the Amended Act was passed in the ordinary course, with extensive hearings and public input. Briones Decl., ¶ 3 (noting that at least 13 hearings were held, including three that included public comment)." [ECF No. 32 at 24 n.6].

[5] Available at https://www.revisor.mn.gov/bills/text.php?number=SF2934& version=1&session=ls93&session_year=2023&session_number=0&type=ue.

11

the 13 hearings to which Defendant refers,[6] only three were held after April 21, 2023, and all occurred before May 19, 2023.[7] And of these three hearings, only the one recorded on May 3, 2023,[8] the hearing at which Attorney General Ellison testified in support of the Amendment, appears to contain public comment.[9] Apparently, the only opportunity for public comment came a mere twelve days after the Amendment appeared anywhere in Senate File 2934, and only one individual, aside from Attorney General Ellison, commented on the Amendment. *SF2934 - Public Testimony on the Human Services Finance Omnibus Bills*, before the Senate Conference Committee, 93d Leg. Sess., at 21:12 (Stearns County Commissioner Tarryl Clark recommending that the Amendment not be passed in part because "unfortunately, right now, there hasn't been any hearings on this issue").[10] Of course, none of the people incarcerated because of Defendant's intentional

---

[6] Defendant may be referring to the list of 13 hearings on the Minnesota Senate's website. *See Minnesota Senate*, Committee Hearings and Actions for S.F. 2934, https://www.senate.mn/schedule/unofficial_action.html?ls=93&bill_type=SF&bill_number=2934&ss_number=0&ss_year=2023.

[7] The Minnesota Legislative Reference Library hosts six Conference Committee hearings on SF 2934, taking place between May 5 and May 18, 2023. It appears that each of the three Conference Committee hearings listed on the Minnesota Senate website took place over two consecutive days. *See* Minnesota Legislative Reference Library, Conference Committee on SF 2934, https://www.lrl.mn.gov/media/index?body=conf&sess=93&comm=9256-0-c&d1=&d2=&y=&video=y&audio=y.

[8] In his initial memorandum in support of his motion for an injunction, Plaintiff mistakenly described this hearing as occurring on May 15, 2023.

[9] *See generally id.*

[10] https://mnsenate.granicus.com/player/clip/11554?view_id=&redirect=true&h=a0c8d980f3d78166ee14e8d0e6b1895d.

failure to comply with the law received any notice of the proposed Amendment. But Defendant knew exactly who they were and where they were.

As set forth above, the Amendment was not "passed in the ordinary course, with extensive hearings and public input" despite Defendant's assertions to the contrary. Instead, the bill that would become the Amendment was added quietly to a significantly broader omnibus bill less than two weeks before the final opportunity for public comment. It proposed to make a seemingly minor addition to a section of the Minnesota Commitment and Treatment Act that was otherwise left unchanged. Like in *United State Army Corps of Engineers*, this is "something far different than adopting a complex statute through fulsome debate" and far less than "the full play of the democratic process." 826 F.3d at 1040. Accordingly, the "fair chance of prevailing" standard should apply to the assessment of the merits of Plaintiff's claims. But as can be seen in his response to Defendant's motion to dismiss, Plaintiff is likely to succeed on the merits of his claims if the Court should adopt that standard. Either way, Plaintiff should prevail.

**2.      Plaintiff is likely to prevail on his void for vagueness claim.**

Simply put, the Amendment is so vague (and subject to a myriad of conditions that may shift over time), it fails to provide meaningful notice as to when or how any individual citizen becomes entitled to that protection. As a result, unlike the words "48 hours," this statute deprives the courts of any way of testing whether an individual was denied that protection. [ECF No. 22 at 9].

In response, Defendant argues only that Plaintiff's void-for-vagueness claim lacks merit because the Amendment is not a criminal statute and it carries no threat of any

13

sanctions to Plaintiff. [ECF No. 32 at 18–19]. But Defendant admits that the doctrine applies to civil statutes, as she must given the Supreme Court's decision in *Sessions v. Dimaya*. 138 S. Ct. 1204, 1213 (2018); *see* [ECF No. 13 at 8 (asserting the vagueness doctrine applies to civil statutes with "less scrutiny")]. Because involuntary civil commitment (and the incarceration that proceeds it under Minnesota commitment law) is more akin to a criminal statute, the heightened standard for vagueness should apply.

Moreover, the Amendment certainly carries with it consequences for Plaintiff that are indistinguishable from criminal sanctions, and the fact that those consequences are *not* predicated on any conduct should subject the Amendment to *more* scrutiny, not less. The express purpose of the Amendment is to permit Defendant to put mentally ill pretrial detainees in jail for longer periods of time. [ECF No. 28 at 12 (noting that "Attorney General Ellison testified that the Amendment would give the Commissioner 'more flexibility'" than 48 hours from commitment)]. And the effect of the Amendment is to affirmatively grant Defendant the sole authority to do so "indefinitely, until such time as DHS determines is 'appropriate.'" [ECF No. 22 at 7]. The only way to find it "implausible" that the Amendment is a "detriment" to mentally ill pretrial detainees is to believe that letting those individuals languish in jail cells without necessary treatment is not detrimental. [ECF No. 32 at 18].

### 3. Plaintiff is likely to prevail on his separation of powers claim.

Plaintiff has thoroughly explained how a statute affirmatively granting an executive branch department the authority to (1) unilaterally decide how long court proceedings may be delayed, (2) unilaterally decide when it is "appropriate" to effectuate court commitment

14

orders, and (3) unilaterally decide when a statutory timeline for its own statutorily mandated conduct begins to run—all without any oversight, meaningful objective standards, or any legitimate means of checking and balancing that authority—violates separation of powers. [ECF No. 22 at 12–15]. The Amended Act does just that.

It violates separation of powers by usurping a traditional judicial function and granting it to DHS—a department of the executive branch. Under the old statute, the Commissioner had to move a committed individual within 48 hours of a court's order for commitment. [ECF No. 23-1 at 8–9 (citations omitted)]. Now, as illustrated by Defendant's opposition where she discusses all the possible reasons why a "medically appropriate bed" might not be available, the Amendment effectively grants DHS unfettered and unreviewable discretion. For that reason, the statute should be enjoined until further discovery can be obtained and this Court can evaluate the claims on the merits and a full record.

### 4. Plaintiff is likely to prevail on his substantive due process claim.

Defendant next argues that "[n]owhere does Mr. Dalen identify a constitutional principle that requires admission of a pretrial detainee for treatment within 48 hours of commitment." [ECF No. 32 at 20]. That is not Plaintiff's claim, despite Defendant's mischaracterization. As Plaintiff has already stated: "Defendant argues that the fundamental liberty interest Plaintiff invokes is an interest in being admitted to a state-run treatment program within 48 hours of his commitment. This is not the case." [ECF No. 22 at 27 (further noting "Plaintiff does not assert a fundamental substantive due process right to treatment in an inpatient setting.")].

As explained, Plaintiff's substantive due process argument stems from the fact that the purpose and effect of the Amendment is to allow Defendant to leave committed individuals in jail for longer periods of time prior to admitting them to treatment. [ECF No. 22 at 27–29]. This (1) extends those individuals' deprivation of treatment for serious mental health conditions, (2) extends their exposure to environments that are uniquely and cruelly injurious to them, and (3) extends the total amount of time they spend in pretrial detention. In simple terms, it infringes on Plaintiff's liberty interests which are constitutionally protected. *See Chairse*, 2023 WL 5984251, at *4.

Although Plaintiff agrees that the question of whether some conduct "shocks the conscience" is a question for the Court, *see Stockley v. Joyce*, 963 F.3d 809, 820 (8th Cir. 2020) ("Whether conduct shocks the conscience is a question of law"), this question should be answered on a full record after discovery and not based on pleadings and sworn statements from the parties. But the fact that Defendant admits that DHS intentionally violates the pre-Amendment statute (without seeking relief from any court) and leaves mentally ill people locked in jail should be enough to shock everyone's conscience.

### B. Plaintiff Has Shown the Irreparable Harm That Will Result Absent the Preliminary Injunction.

Defendant claims that Plaintiff "has offered no evidence that he, personally, suffered any specific harm during his detention." [ECF No. 32 at 22–23]. But this is not the law. *Doe v. LaDue*, 514 F. Supp. 2d 1131, 1135 (D. Minn. 2007) (stating that this *Dataphase* factor requires the plaintiff to establish "that irreparable harm *will* result without injunctive relief" (emphasis added)). Regarding Mr. Dalen's situation, he was recently placed on

probation in Stearns County and is currently residing within the community. But there is an active Itasca County Court order committing him to the custody of Defendant. Once Mr. Dalen turns himself in or is arrested, he again becomes subject to the priority-admission statute. At that point, the Amendment operates to allow Defendant to leave him in jail until her department unilaterally decides an "appropriate" bed is available for him. This will result in Mr. Dalen being held in jail for far longer than he otherwise could have been. That alone is a risk of irreparable harm and the Amendment is the vehicle that poses that imminent risk of irreparable harm to Plaintiff.

More importantly, contrary to Defendant's assertion that Plaintiff "moves for a preliminary injunction[] on behalf of himself," Plaintiff seeks an injunction for himself but also to protect a putative class of other individuals who have been or will be committed to Defendant's custody for treatment, but who will instead be left to languish in jail by operation of the Amendment. [ECF No. 32 at 14]. Defendant makes no argument as to why the Amendment does not risk imminent irreparable injury to any or all of the putative class members.

### C. The Injunction is in the Public Interest.

Defendant contends that the public interest would not be served by an injunction because the pre- and post-Amendment 48-hour law "serve the purpose of prioritizing the admission of people who are detained or incarcerated for treatment pursuant to their civil commitment." [ECF No. 32 at 25]. This argument is premised, yet again, on Defendant's

factually unsupported argument that the Amendment clarified rather than changed the law."[11] [ECF No. 32 at 18 n.2].

For the reasons already discussed, this argument finds no factual or legal basis for several reasons: (1) it is contrary to the plain language of the former statute; (2) every court to have considered the issue has emphatically rejected such an interpretation; (3) Attorney General Ellison—Defendant's counsel and the first signatory on Defendant's response memorandum—has admitted before the Minnesota Legislature that the former 48-hour law "required that the Department of Human Services transfer inmates to a state-run facility within 48-hours of a civil commitment;" and (4) DHS officials have previously acknowledged that the pre-Amendment statue meant what it said.[12] Rather, the public interest is served by government officials adhering, in good faith, to laws duly enacted by the democratic process—not by those officials attempting to escape liability by first defiantly insisting on an interpretation of the law that is in their favor and, when that fails,

---

[11] Defendant offers an identical argument against the balance-of-harms *Dataphase* factor.

[12] *See generally*, [ECF No. 22 at 4–5]. Indeed, in the order issued in *Ly v. Harpstead* quoted above, the court continued:

> Of more concern to the Court is the fact that the Department of Human Services has previously interpreted the 48-hour requirement as running from the time of commitment. . . . [T]he Department of Human Services has correctly and fairly interpreted the 48-hour rule to start at the time of commitment. . . . The "new" and novel interpretation that the 48 hours should begin when a "medically appropriate bed becomes available" is self-serving and wholly the result of the increasing pressure on the Commissioner to comply with the law and has little to do with how the law actually reads.

[ECF No. 23-1 at 9–10].

using their outsized influence to change the law to the detriment of the most vulnerable citizens. The 48-hour law was proposed and passed in 2013 for good reason, as set forth in Plaintiff's initial memorandum. *See* [ECF No. 28 at 9–13]. Until the validity of the Amendment can be determined in full, an injunction maintaining the status quo by prohibiting enforcement of the Amendment serves the public interest.

## CONCLUSION

For the foregoing reasons, Plaintiff requests that the Court grant the motion for an injunction enjoining operation of the Amendment.

Dated: October 16, 2023

**GUSTAFSON GLUEK PLLC**

*/s/Daniel E. Gustafson*
Daniel E. Gustafson (#202241)
David A. Goodwin (#386715)
Anthony J. Stauber (#401093)
Joseph E. Nelson (#402378)
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Telephone: 612-333-8844
Fax: 612-339-6622
dgustafson@gustafsongluek.com
dgoodwin@gustafsongluek.com
tstauber@gustafsongluek.com
jnelson@gustafsongluek.com

**JASPERS, MORIARTY & WETHERILLE, P.A.**
Kevin J. Wetherille (#033036X)
James P. Conway (#0391044)
206 Scott Street
Shakopee, MN 55379
(952) 445-2817

**THRONDSET MICHENFELDER, LLC**
Jason Gustafson (#0403297)
One Central Avenue West
St. Michael, MN 55376, Suite 101
Tel: (763)-515-6110
Cell: (612)-889-0341

**FREMSTAD LAW**
Hannah L. Scheidecker (#0401987)
3003 32nd Ave. S., Ste. 240
Fargo, ND 58103
(701) 478-7620
hannah@fremstadlaw.com

*Attorneys for Plaintiff and the Proposed Class*