UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Kyle Jerome Dalen, *individually and on behalf of all others similarly situated*, | File No. 23-cv-1877 (ECT/ECW) |
| Plaintiff, | |
| v. | **OPINION AND ORDER** |
| Jodi Harpstead, *Commissioner of the Minnesota Department of Human Services, in her individual and official capacities*, | |
| Defendant. | |

Daniel E. Gustafson, David A. Goodwin, Anthony J. Stauber, and Joseph E. Nelson, Gustafson Gluek PLLC, Minneapolis, MN; Kevin J. Wetherille and James P. Conway, Jaspers Moriarty & Wetherille, P.A., Shakopee, MN; Jason D. Gustafson, Throndset Michenfelder Law Office, LLC, St. Michael, MN, and Hannah L. Scheidecker, Fremstad Law, Fargo, ND, for Plaintiff Kyle Jerome Dalen.

Aaron Winter and Sparrowleaf Dilts McGregor, Office of the Minnesota Attorney General, St. Paul, MN, for Defendant Jodi Harpstead.

Plaintiff Kyle Jerome Dalen was under a civil commitment order while in the custody of a Minnesota county jail facing criminal charges. Mr. Dalen claims that a Minnesota statute, Minn. Stat. § 253B.10, subdiv. 1(b), required his admission to a state-operated treatment program within 48 hours of his detention in Stearns County. His admission was delayed well beyond that 48-hour period. When Mr. Dalen was detained originally, the statute required his admission to a treatment facility "within 48 hours." Minn. Stat. § 253B.10, subdiv. 1(b) (2022). It seems every court to have decided the

question understood this 48-hour period to run beginning on entry of a commitment order. Not quite two months into Mr. Dalen's detention, the statute was amended to say that the 48-hour period begins to run when a state official determines "a medically appropriate bed is available."  2023 Minn. Laws c. 61, art. 4, § 7.

In this case removed from Dakota County District Court, Mr. Dalen asserts several federal and state claims—including claims under the United States and Minnesota Constitutions—on his behalf and on behalf of a proposed class of individuals who, like Mr. Dalen, have been injured by violations of the 48-hour rule.  There may be more to the case, but as I understand it, Mr. Dalen seeks damages arising from the Commissioner's violation of the 48-hour rule's earlier version and an injunction halting implementation of the amended version.

Two motions require a decision.  (1) The Commissioner has moved to dismiss the case on jurisdictional and merits grounds, and (2) Mr. Dalen seeks to preliminarily enjoin implementation of the 48-hour rule's 2023 amendment pending entry of final judgment in this case.[1]  The Commissioner's motion will be granted in part.  Though the better answer at this stage is that Mr. Dalen has Article III standing to bring this case, his federal claims are not plausibly alleged, and they will be dismissed without prejudice for failure to state a claim.  Primarily for this same reason, and because he has not shown a likelihood of irreparable harm, Mr. Dalen's motion for a preliminary injunction will be denied.  Mr. Dalen will be given the opportunity to file a second amended complaint.  If he chooses not

---

[1]    Mr. Dalen filed his motion for a preliminary injunction five days after briefing was completed on the Commissioner's Rule 12 motion.  *See* ECF Nos. 11, 25, and 26.

to pursue that course, the federal claims will be dismissed with prejudice, judgment will be entered, and the case will be remanded to Dakota County District Court for adjudication of Mr. Dalen's claims under Minnesota law.

## I

### *Minn. Stat. § 253B.10, subdiv. 1*

Section 253B.10 is central to Mr. Dalen's claims, so it helps to describe it up front. The statute generally describes procedures to be followed when a person is civilly committed. It requires that, when a person is civilly committed, "the court shall issue a warrant or an order committing the patient to the custody of the head of the treatment facility, state-operated treatment program, or community-based treatment program." Minn. Stat. § 253B.10, subdiv. 1(a).

The statute requires the Commissioner to "prioritize patients being admitted from jail or a correctional institution" who fall into any of four categories: (1) persons "ordered confined in a state-operated treatment program for" a competency examination under Minnesota Rule of Criminal Procedure 20.01; (2) persons "under civil commitment for competency treatment and continuing supervision" after being found incompetent to stand trial, *see* Minn. R. Crim. P. Rule 20.01, subdiv. 7; (3) persons "found not guilty by reason of mental illness" pursuant to Minnesota Rule of Criminal Procedure 20.02, subdivision 8, and who are either "under civil commitment or are ordered to be detained in a state-operated treatment program pending completion of the civil commitment proceedings"; or (4) persons who are civilly committed "after dismissal of the [person's] criminal charges." Minn. Stat. § 253B.10, subdiv. 1(b)(1)–(4).

3

Of central significance here, the statute establishes a deadline by which persons who fall into any of these four categories must be admitted to a state-operated treatment program. In view of the recent statutory amendment, this deadline's history deserves some explanation.

Beginning July 1, 2013, the statute required that persons described in any of the four prioritized-admission categories "must be admitted to a service operated by the commissioner within 48 hours." 2013 Minn. Laws c. 108, art. 4, § 11. Prior to July 1, 2013, the law contained no such deadline; the law did not prioritize admission of civilly committed patients from a jail or correctional institution. *See id.* The statute was amended in 2020 to specify that admission "within 48 hours" must be "to a state-operated treatment program." 2020 Minn. Laws c. 2, art. 6, § 60. Minnesota state courts have interpreted the 48-hour deadline's original 2013 version as beginning to run when a court entered the "warrant or an order committing the patient" as required by the first sentence of Minn. Stat. § 253B.10, subdiv. 1. *Swope v. Harpstead*, No. 70-CV-22-13153, Index No. 109 (First Judicial Dist., Scott Cnty. Feb. 22, 2023) ("When reading sections (a) and (b) together, it is unequivocal that a patient must be admitted within 48-hours [sic] of the Court issuing a warrant or order committing the patient to the Commissioner. The statute is not susceptible to more than one reasonable interpretation, it is not ambiguous, and it must be interpreted according to its plain meaning."); *Ly v. Harpstead*, No. 70-CV-22-13781, Index No. 65 (First Judicial Dist. Scott Cnty. Dec. 21, 2022) ("When reading subdivision 1(b) in light of subdivision 1(a), the clear and unequivocal relevant time marker for the 48 hours is from the time of commitment, when the court issues the warrant or order committing the patient

under subdivision 1(a). Therefore, the statute is not susceptible to more than one reasonable interpretation, and so the statute is interpreted according to its plain meaning without resorting to the canons of construction."), *appeal dismissed*, No. A22-1826, 2023 WL 2661371 (Minn. Ct. App. Feb. 7, 2023), *review granted*, (Minn. May 31, 2023); *see In the Matter of the Civil Commitments of Christodoulou, Elm, and Hassan*, Nos. A17-1312, 1314, and 1315, 2018 WL 1145892, at *1 (Minn. Ct. App. Mar. 5, 2018) (understanding the 48-hour rule as running from date of commitment and not when treatment facilities first become available). If there are cases interpreting the 48-hour rule's original 2013 version to begin running based on a different, later event, the Commissioner has not cited them. Nor has independent research located such a case.

During the 2023 regular session, the legislature amended the 48-hour rule in § 253B.10, subdiv. 1. As amended, the statute includes a new subsection (e) that reads: "Patients described in paragraph (b) must be admitted to a state-operated treatment program within 48 hours of the Office of Medical Director, under section 246.018, or a designee determining that a medically appropriate bed is available. This paragraph expires on June 30, 2025." 2023 Minn. Laws c. 61, art. 4, § 7. The amendment deleted the prior version of the 48-hour rule that appeared at the end of subdivision 1(b). *Id.* The amendment was effective May 25, 2023. *See Chairse v. Minn. Dep't of Hum. Servs.*, No. 23-cv-355 (ECT/ECW), 2023 WL 5984251, at *2 (D. Minn. Sept. 14, 2023) (explaining determination of amendment's effective date). According to Mr. Dalen, this amendment was intended to counter criticism and legal challenges arising from the Commissioner's

5

failure to comply with the 48-hour rule's 2013 version.  Am. Compl. [ECF No. 10] ¶¶ 5–10.

## II

### *Relevant Facts Regarding Mr. Dalen*

Mr. Dalen's central allegation is that he—among numerous others in Minnesota—was injured by a violation of the 48-hour rule.  That is, Mr. Dalen claims to have been jailed while under a commitment order falling within one of the four prioritized-patient categories of § 253B.10, subdiv.1(b), and he claims the Commissioner failed to admit him to a state-operated treatment program within 48 hours of the court's entry of his commitment order.  The operative Amended Complaint alleges this theory generally in several paragraphs.  *See* Am. Compl. ¶¶ 1, 6, 8, 12, 16, 39.

The Amended Complaint alleges facts specifically regarding Mr. Dalen in one paragraph:

> Plaintiff Kyle[] Dalen is an individual and a resident of Dakota County, Minnesota.  Mr. Dalen suffers from antisocial personality disorder, narcissistic personality disorder, and chemical dependency.  Mr. Dalen was initially committed to the custody of the Commissioner by a November 3, 2022, court order.  On April 4, 2023—while Mr. Dalen was still committed to the Commissioner's custody—he was arrested, jailed, and charged in Stearns County criminal file No. 73-CR-23-2528.  Mr. Dalen had not received any treatment since the court's November 3 order.  Following an April 28, 2023, recommitment hearing, the court issued an order for continued commitment.  Neither commitment order was appealed.  Mr. Dalen was only recently admitted to a state operated treatment program.

Am. Compl. ¶ 3.

In response to questions raised at the hearing on these motions and in light of the parties' disagreement regarding the precise facts of Mr. Dalen's commitment, the parties submitted a joint letter summarizing state-court proceedings involving Mr. Dalen.  *See* Ltr. to Dist. Judge [ECF No. 40].  The facts described in this letter appear to have been taken from public court records and, for this reason, are appropriately considered in adjudicating the Commissioner's Rule 12(b)(6) motion.  *See C.H. Robinson Worldwide, Inc. v. Lobrano*, 695 F.3d 758, 764 (8th Cir. 2012); *Noble Sys. Corp. v. Alorica Cent., LLC*, 543 F.3d 978, 983 (8th Cir. 2008).  The letter identifies three court cases relevant to Mr. Dalen's claims in this case.  The following descriptions of those three cases are drawn from the parties' joint letter; quoted statements appear in quotations in the parties' letter and are understood to have been taken from court records.

(1) On May 20, 2021, Mr. Dalen was charged in Itasca County District Court (No. 31-CR-21-1240) with one count of harassment and one count of violating a harassment restraining order.   In October 2021, the court found reason to doubt Mr. Dalen's competency and ordered an examination under Minn. R. Crim. P. 20.01.  The parties do not say whether Mr. Dalen was ordered confined in a state-operated treatment program for this examination.  *See* Minn. Stat. § 253B.10, subdiv. 1(b)(1).  In January 2022, the court found that Mr. Dalen was "mentally ill so as to be incapable of understanding the proceedings against him or participating in his defense."  The court determined, however, that Mr. Dalen "[did] not present an imminent risk of serious physical harm to himself or others," and ordered Mr. Dalen "released pending commitment hearing" subject to conditions.  In May 2022, Mr. Dalen violated those release conditions and was re-arrested.

On June 29, 2022, the court again found reason to doubt Mr. Dalen's competency to proceed. The court ordered that Mr. Dalen undergo "a civil commitment examination under Minnesota Statutes section 253B" but also found that, subject to certain conditions, Mr. Dalen "is entitled to release, and the examination can be done on an outpatient basis." This criminal case was then suspended under Minnesota Rule of Criminal Procedure 20.01, subdiv. 6(b). Based on the parties' description, it does not appear the court ever issued a warrant or order in this case committing Mr. Dalen under § 253B.10.

(2) On November 9, 2022, the Itasca County District Court (No. 31-PR-22-2358) issued an order committing Mr. Dalen to the Commissioner's custody and to the head of a licensed substance-use-disorder treatment facility as "a mentally ill and chemically dependent person." The court found that Mr. Dalen met the criteria for a "person who poses a risk of harm due to a mental illness," as defined in Minn. Stat. § 253B.02, subd. 17a. The court ordered Mr. Dalen to "fully cooperate in applying for recommended treatment or admission to recommended treatment programs or facilities." Though neither the Amended Complaint nor the parties' joint letter says so explicitly, I infer from these allegations that, following the entry of this commitment order, Mr. Dalen remained "under continuing supervision" pursuant to Minn. R. Crim. P. 20.01, subdiv. 7, in the Itasca County District Court criminal case described in the preceding paragraph. On May 4, 2023, the commitment court found that Mr. Dalen had been "unwilling to establish outpatient mental health care for either therapy or psychiatric medication management." The court continued Mr. Dalen's civil commitment for six months. The commitment order was terminated on October 30, 2023.

(3) On March 29, 2023—following entry of the commitment order in the Itasca County District Court commitment proceeding described in the preceding paragraph and while that order remained in place—Mr. Dalen was charged in Stearns County District Court (No. 73-CR-23-2528) with three felony counts of harassment and stalking.   On April 3, 2023, Mr. Dalen was arrested on these charges and booked into the Stearns County Jail.   Over two months later, on June 6, 2023, the Commissioner admitted Mr. Dalen to the Anoka-Metro Regional Treatment Center.   Roughly one month later, on July 5, 2023, Mr. Dalen was provisionally discharged from treatment and ordered by the Itasca County District Court to be returned to Stearns County Jail.   Mr. Dalen subsequently pleaded guilty to two counts of gross misdemeanor harassment.   He was sentenced on October 3, 2023.

Putting all of this together, it seems plausible to infer from the Amended Complaint and the parties' joint letter that the 48-hour-rule violation Mr. Dalen alleges to have suffered occurred as follows: (1) On November 9, 2022, the Itasca County District Court in No. 31-PR-22-2358 issued an order committing Mr. Dalen to the custody of the Commissioner and the head of a treatment program within the meaning of Minn. Stat. § 253B.10, subdiv. 1(a).   (2) The November 9 commitment order subjected Mr. Dalen to "continuing supervision" in the Itasca County District Court criminal case (No. 31-CR-21-1240) pursuant to Minn. R. Crim. P. 20.1, subdiv. 7.   (3) So, when Mr. Dalen was arrested and jailed in the Stearns County District Court criminal case (No. 73-CR-23-2528), he  was a prioritized patient by operation of Minn. Stat. § 253B.10, subdiv. 1(b)(2), meaning the

Commissioner was required to admit him "to a state-operated treatment program within 48 hours" under § 253B.10, subdiv. 1(b).[2]

### III

### *This Case*

Mr. Dalen brought this case originally in the State of Minnesota District Court, Dakota County. *See* Notice of Removal [ECF No. 1] ¶ 1; *see also* Summons and Compl. [ECF No. 1-2]. Owing to the presence of claims arising under federal law, the Commissioner removed the case to this Court in June 2023. *See generally* Notice of Removal. Mr. Dalen asserts nine claims in his Amended Complaint. As I understand them, Mr. Dalen's claims fall into either or both of two categories. In one category are damages claims arising from the Commissioner's alleged violation of the 48-hour rule's original 2013 version with respect to Mr. Dalen. In the second category are claims challenging the lawfulness of the 2023 amendment to the 48-hour rule.

Mr. Dalen's nine claims are as follows: (1) Mr. Dalen claims that the 2023 amendment to the 48-hour rule is unconstitutionally vague in violation of due-process protections provided by the Fourteenth Amendment to the United States Constitution and the Minnesota Constitution. Am. Compl. ¶¶ 24–30. (2) Mr. Dalen claims that the 2023 amendment to the 48-hour rule violates separation-of-powers principles under the United States and Minnesota Constitutions. *Id.* ¶¶ 31–35. In Mr. Dalen's understanding, "[w]hether a criminal defendant should undergo competency evaluation or treatment prior

---

[2]    If this is not correct, and if it matters to the decisions on the parties' motions, the parties are invited to file a letter pursuant to D. Minn. L.R. 7.1(j).

to pleading or being tried is a determination relegated [sic] to the judicial branch under constitutional precedent and rules of criminal procedure." *Id.* ¶ 32.  (3) Mr. Dalen seeks damages through 42 U.S.C. § 1983 arising from the Commissioner's deliberate indifference to his serious medical needs in violation of the Fourteenth Amendment to the United States Constitution. *Id.* ¶¶ 36–41.  (4) Mr. Dalen seeks damages through § 1983 arising from the Commissioner's imposition of pretrial punishment on Mr. Dalen in violation of due-process principles under the United States and Minnesota Constitutions. *Id.* ¶¶ 42–50.  (5) Mr. Dalen seeks damages through § 1983 arising from the Commissioner's imposition of unreasonable bodily restraints on Mr. Dalen in violation of due-process principles under the United States and Minnesota Constitutions. *Id.* ¶¶ 51–58.  (6) Mr. Dalen seeks damages through § 1983 arising from the Commissioner's violation of substantive-due-process rights guaranteed Mr. Dalen under the Fourteenth Amendment to the United States Constitution.  *Id.* ¶¶ 59–67.  (7) Mr. Dalen asserts an intentional-infliction-of-emotional-distress claim under Minnesota common law. *Id.* ¶¶ 68–73  (8) Mr. Dalen asserts a negligent-infliction-of-emotional-distress claim under Minnesota common law.  *Id.* ¶¶ 74–80.  (9) Mr. Dalen claims false imprisonment under Minnesota common law.  *Id.* ¶¶ 81–84.  On his behalf and on behalf of putative class members, I understand Mr. Dalen to seek damages and perhaps also equitable relief with respect to the Commissioner's alleged violations of the original 2013 version of the 48-hour rule, declaratory and injunctive relief preventing implementation of the 2023 amendment to the 48-hour rule, and attorneys' fees and costs. *See id.* at 18, ¶¶ A–H.

11

IV

*Subject-Matter Jurisdiction/Article III Injury*

The presence of claims "arising under the Constitution [and] laws . . . of the United States" ordinarily means a federal court has subject-matter jurisdiction over a case. 28 U.S.C. § 1331.  To support removal, the Commissioner represented that this case fits that ordinary rule based on Mr. Dalen's assertion of claims under § 1983 and the United States Constitution.  *See* Notice of Removal ¶¶ 7–8.  The Commissioner also alleged the presence of supplemental jurisdiction over Mr. Dalen's state-law claims.  *Id.* ¶¶ 9–10. Now, however, the Commissioner argues there is not subject-matter jurisdiction over the case.  This is because, in the Commissioner's view, Mr. Dalen lacks Article III standing— specifically, Article III injury—to challenge the 48-hour rule's 2023 amended version.  *See* Def.'s Mem. in Supp. [ECF No. 13] at 6–7.  As presented by the Commissioner, this contention is not persuasive.

"A court deciding a motion under Rule 12(b)(1) must distinguish between a 'facial attack' and a 'factual attack.'"  *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990) (citations omitted).  "In a facial attack, the court merely needs to look and see if plaintiff has sufficiently alleged a basis of subject matter jurisdiction." *Branson Label, Inc. v. City of Branson*, 793 F.3d 910, 914 (8th Cir. 2015) (cleaned up).  "Conversely, in a factual attack, the existence of subject matter jurisdiction is challenged in fact, irrespective of the pleadings, and matters outside the pleadings . . . are considered."  *Id.* at 914–15 (cleaned up).  Here, all we have are the Amended Complaint's allegations and public records embraced by the pleading, *C.H. Robinson Worldwide, Inc.*, 695 F.3d at 764; *Noble*

*Sys. Corp.*, 543 F.3d at 983, meaning the Article III standing question the Commissioner has identified amounts to a facial attack.

To establish Article III standing against a facial attack, the operative pleading must allege facts plausibly showing that the plaintiff has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016); *see also Thole v. U.S. Bank N.A.*, 590 U.S. ---, 140 S. Ct. 1615, 1621 (2020) (noting that these elements must be "plausibly and clearly allege[d]"); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (citation omitted).[3] "In assessing a plaintiff's Article III standing, we must 'assume that on the merits the plaintiffs would be successful in their claims.'" *Am. Farm Bureau Fed'n v. United States Env't Prot. Agency*, 836 F.3d 963, 968 (8th Cir. 2016) (quoting *Muir v. Navy Fed. Credit Union*, 529 F.3d 1100, 1105 (D.C. Cir. 2008)).

The Supreme Court has explained in some detail what makes an injury "concrete" for Article III's purposes. *See, e.g.*, *Ramirez*, 594 U.S. at 424–29. A "concrete" injury is "real, and not abstract." *Spokeo*, 578 U.S. at 340 (cleaned up). Complaints that allege

---

[3]      I don't think it matters, but the ordinarily important and easy-to-answer question of who has the burden to show the presence of subject-matter jurisdiction is not so easy to answer here. In the usual case, "the party invoking federal jurisdiction" has the burden to show Article III standing. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 430–31 (2021) (citing *Lujan*, 504 U.S. at 561). In this case, that would be the Commissioner because she removed the case to federal court. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Baker v. Martin Marietta Materials, Inc.*, 745 F.3d 919, 923 (8th Cir. 2014). The Commissioner's standing argument is not consistent with her removal of the case. Regardless, "[l]ack of subject matter jurisdiction cannot be ignored by the court or waived by the parties." *Johnson v. Welsh Equip., Inc.*, 518 F. Supp. 2d 1080, 1085 (D. Minn. 2007). The Commissioner's argument will be considered without regard to which party bears the burden to establish the presence of Mr. Dalen's Article III injury.

"economic or physical harms" are almost always no-doubters. *Hein v. Freedom from Religion Found., Inc.*, 551 U.S. 587, 642 (2007) (Souter, J., dissenting). This is true even if the alleged harm is "only a few pennies." *Wallace v. ConAgra Foods*, *Inc.*, 747 F.3d 1025, 1029 (8th Cir. 2014). "When the suit is one challenging the legality of government action or inaction" and "the plaintiff is himself an object of the action (or forgone action) at issue . . . , there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it." *Lujan*, 504 U.S. at 561–62.

Here, Mr. Dalen alleges facts plausibly showing that he suffered injury for Article III's purposes. As noted, Mr. Dalen claims to have suffered injury capable of redress through damages owing to the Commissioner's alleged failure to comply with the 2013 version of the 48-hour rule. At least at the level of describing his injuries, this theory is not complicated. Mr. Dalen claims the Commissioner's violation left him to "languish" in the Stearns County Jail for several weeks without the treatment he requires to address his mental illness and chemical dependency. Am. Compl. ¶¶ 1, 3; *see* Ltr. to Dist. Judge at 2 (describing Mr. Dalen's Stearns County confinement). It is easy to see how Mr. Dalen (or anyone like him) would plausibly suffer injuries in this situation. And, while Mr. Dalen was jailed in Stearns County, the 48-hour rule's 2023 version became effective, meaning Mr. Dalen was subjected to what he alleges was an unconstitutional enactment. *See Lujan*, 504 U.S. at 561–62.

Though there is room for misunderstanding, I understand the Commissioner to advance essentially two arguments to show the absence of Article III injury. First, the

Commissioner argues that Mr. Dalen has not alleged any injury arising from the 2023 amended version of the 48-hour rule. Mem. in Supp. at 6–7. This is not correct. Mr. Dalen alleges to have been jailed from April 3, 2023, through June 6, 2023, meaning he was subject to both the 48-hour rule's original 2013 version (from April 3 to May 24) and the amended 2023 version (from May 25 to his admission to Anoka-Metro Regional Treatment Center on June 6). And he claims to have suffered injury under both versions including at least damages arising from the Commissioner's failure to comply with the 48-hour rule's 2013 version and injury from being subjected to the assertedly unconstitutional 2023 amended version. Second, the Commissioner argues that Mr. Dalen's injuries were caused—not by her inaction or action with respect to either version of the 48-hour rule— but by Mr. Dalen's failure to post bail. *Id.* at 7. There are several reasons to reject this argument. At this point, it is enough to observe that no record evidence shows whether Mr. Dalen had the ability to post bail, meaning this argument would require speculating about that fact.[4]

---

[4]     One issue not addressed by the parties deserves mention. A plaintiff only has standing to seek prospective injunctive and declaratory relief when he faces an ongoing injury or a "real and immediate" threat of future injury. *City of Los Angeles v. Lyons*, 461 U.S. 95, 101–05, 107 n.8 (1983). The Amended Complaint alleges that Mr. Dalen suffers from ongoing mental illness and chemical dependency and leaves the impression— especially in view of his commitment and criminal records—that he faces some ongoing risk of further civil commitment and jailing. Whether this is enough to show the "real and immediate" threat required by *Lyons* is not clear. Regardless, I infer from the Commissioner's decision not to raise this question that she believes the Amended Complaint's allegations are sufficient and perhaps that an answer likely would depend on a factual record we don't have. For the time being, this issue will therefore be left unaddressed.

V

*The Governing Standards and Order of Operations*
*Regarding the Rule 12(b)(6) and Rule 65 Motions*

The standards governing the Commissioner's motion to dismiss under Rule 12(b)(6) are familiar.  In reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor.  *Gorog v. Best Buy Co. Inc.*, 760 F.3d 787, 792 (8th Cir. 2014) (citation omitted).  Although the factual allegations need not be detailed, they must be sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The complaint must "state a claim to relief that is plausible on its face."  *Id.* at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The standards governing Mr. Dalen's motion for a preliminary injunction also are familiar.  A preliminary injunction is an "extraordinary remedy."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citation omitted).  "In deciding whether to issue a preliminary injunction, the district court considers four factors: '(1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that [the] movant will succeed on the merits; and (4) the public interest.'"  *Sleep No. Corp. v. Young*, 33 F.4th 1012, 1016 (8th Cir. 2022) (quoting *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640

F.2d 109, 113 (8th Cir. 1981) (en banc)).  The core question is whether the equities "so favor[] the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." *Dataphase*, 640 F.2d at 113 (footnote omitted).  "The burden of establishing the four factors lies with the party seeking injunctive relief." *CPI Card Grp., Inc. v. Dwyer*, 294 F. Supp. 3d 791, 807 (D. Minn. 2018) (citing *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003)).  "While no single factor is determinative, the probability of success factor is the most significant." *Home Instead, Inc. v. Florance*, 721 F.3d 494, 497 (8th Cir. 2013) (cleaned up); *Sleep No. Corp.*, 33 F.4th at 1016.

Here, it makes better sense to begin with the Commissioner's Rule 12(b)(6) motion. Answering whether the Amended Complaint alleges a plausible claim or claims may answer—and will at least inform—whether Mr. Dalen is likely to prevail on the merits of one or more of his claims.  To account for the chance that Mr. Dalen's state-law claims may be remanded pursuant to 28 U.S.C. § 1367(c), Mr. Dalen's federal claims will be considered first in the order they appear in the Amended Complaint.

VI

A

*Count I – Void-for-Vagueness Challenge*

Relying on the Fourteenth Amendment's Due Process Clause, Mr. Dalen claims that the 2023 amendment to § 253B.10, subdiv. 1, is void for vagueness.  Am. Compl. ¶¶ 24– 30.  "The void-for-vagueness doctrine reflects the principle that a statute which either forbids or requires the doing of an act in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application, violates

the first essential of due process of law." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 629 (1984)

(cleaned up).   A statute is void for vagueness if it either "fails to provide a person of

ordinary intelligence fair notice of what is prohibited," or "it is so standardless that it

authorizes or encourages seriously discriminatory enforcement."  *United States v. Paul*,

885 F.3d 1099, 1105 (8th Cir. 2018) (quoting *United States v. Cook*, 782 F.3d 983, 987

(8th Cir. 2015).   "[T]he doctrine guards against arbitrary or discriminatory law enforcement

by insisting that a statute provide standards to govern the actions of police officers,

prosecutors, juries, and judges." *Sessions v. Dimaya*, 584 U.S. ---, 138 S. Ct. 1204, 1212

(2018) (citing *Kolender v. Lawson*, 461 U.S. 352, 357–358 (1983)).   "In that sense, the

doctrine is a corollary of the separation of powers—requiring that [the legislature], rather

than the executive or judicial branch, define what conduct is sanctionable and what is not."

*Id.* (citation omitted).  Particularly relevant here, a law is not void for vagueness because it

requires the exercise of medical (or other professional) judgment.   *United States v.*

*Birbragher*, 603 F.3d 478, 489 (8th Cir. 2010) (holding that the phrase "usual scope of

professional practice" "has an objective meaning that prevents arbitrary prosecution and

conviction: Neither the government nor the jury is free to impose its own subjective views

about what is and is not appropriate; rather, the government is obliged to prove, and the

jury constrained to determine, what the medical profession would generally do in the

circumstances"); *United States v. Robinson*, 253 F. Supp. 3d 1, 2–4 (D.D.C. 2017) (finding

that standards including "legitimate medical purpose" and "usual course of . . . professional

practice" were not unconstitutionally vague); *see Patch v. Posusta*, No. 06-cv-0409

(PJS/JJG), 2007 WL 3455002, at *4 (D. Minn. Nov. 14, 2007) ("The enforcement of most

laws requires the exercise of discretion; lawmakers are not clairvoyant, and it is impossible, in a law of general applicability, to address with surgical precision every possible circumstance to which the law might apply.").[5]

The 2023 amendment to § 253B.10, subdiv. 1, is not impermissibly vague.  To recap, under the amendment, a prioritized patient like Mr. Dalen "must be admitted to a state-operated treatment program within 48 hours of the Office of Medical Director, under section 246.018, or a designee determining that a medically appropriate bed is available." Minn. Stat. § 253B.10, subdiv. 1(e).  Section 246.018 establishes and defines the duties of the Office of Medical Director.  Minn. Stat. § 246.018.  The Medical Director "must be a psychiatrist certified by the Board of Psychiatry."  *Id.*, subdiv. 2.  The Medical Director must also be "licensed."  *Id.*  If a criminal law that establishes "usual scope of medical practice" as the standard is not unconstitutionally vague, *Birbragher*, 603 F.3d at 489, it is difficult to see how the "medically appropriate" determination required in § 246.018 would be.  And, as the Commissioner points out, this standard appears in many Minnesota statutes, *see* Mem. in Supp. at 10, implying the standard has widespread understanding, certainly among physicians and health-care professionals.  No case has been cited or identified through independent research holding or implying that this or a comparable standard is or might be impermissibly vague.  It is not clear whether Mr. Dalen challenges the standard's "availability" component.  Regardless, this aspect of the standard would

---

[5]     The parties dispute whether the challenged statute should receive lesser scrutiny because it is a civil, not a criminal, statute.  *See Dimaya*, 138 S. Ct. at 1212.  Because the challenged statute survives the standard applied to criminal statutes, this dispute need not be resolved.

appear to require answering a reasonably clear question regarding the inventory of available, medically appropriate beds. For these purely legal reasons, then, Count I will be dismissed.

## B

### *Count II – Separation of Powers Challenge*

Mr. Dalen claims that the 2023 amendment to § 253B.10, subdiv. 1, violates separation-of-powers principles. Am. Compl. ¶¶ 31–35. The Amended Complaint identifies no particular federal (or state) constitutional provision, doctrine, or line of cases on which the claim might be based. Not that it had to. *See* Fed. R. Civ. P. 8(a)(2). However, in his brief opposing the Commissioner's Rule 12(b)(6) motion, Mr. Dalen relies on only the Minnesota Constitution to support this claim. *See* Pl.'s Mem. in Opp'n [ECF No. 22] at 12–15. He cites no federal constitutional rule or other federal authority. Therefore, to the extent this claim was intended originally to rely on the United States Constitution or some other federal legal principle, I understand that federal aspect of the claim to have been waived. *See Fiecke-Stifter v. MidCountry Bank*, No. 22-cv-3056 (ECT/DTS), 2023 WL 5844758, at *8 n.4 (D. Minn. Sept. 11, 2023).

## C

### *Count III – Deliberate Indifference Claim*

Mr. Dalen alleges the Commissioner failed to provide him with adequate medical care in violation of the Fourteenth Amendment's Due Process Clause. Am. Compl. ¶¶ 36–41. The Eighth Amendment's deliberate-indifference standard applies to a Fourteenth Amendment claim alleging deficient medical care brought by a pretrial detainee or civilly

committed person. *Leonard v. St. Charles Cnty. Police Dep't*, 59 F.4th 355, 360 (8th Cir.

2023) (pretrial detainee); *Mead v. Palmer*, 794 F.3d 932, 936 (8th Cir. 2015) (civil

committee). As the court explained in *Leonard*:

> "[D]eliberate indifference is a difficult standard to meet."
> *Spencer v. Knapheide Truck Equip., Co.*, 183 F.3d 902, 906
> (8th Cir. 1999). It requires an official to consciously disregard
> a known and "objectively serious medical need." *Schaub v.
> VonWald*, 638 F.3d 905, 914 (8th Cir. 2011). A serious
> medical need is one diagnosed by a physician or "so obvious
> that even a layman would recognize [it]." *Id.* (citation
> omitted). And the disregard for it must rise to the level of
> criminal recklessness. *Jackson v. Buckman*, 756 F.3d 1060,
> 1066 (8th Cir. 2014); *see Estelle [v. Gamble]*, 429 U.S. [97,]
> 105–06 . . . [(1976)]. Only then is the failure to act a
> "punishment[]." *Estelle*, 429 U.S. at 102–06 . . .; *see* U.S.
> Const. amend. VIII.

59 F.4th at 360; *see Karsjens v. Lourey*, 988 F.3d 1047, 1052 (8th Cir. 2021) (*Karsjens II*)

(recognizing that the Eighth Amendment requires a plaintiff to show that the defendant

"knew about excessive risks to [the plaintiff's] health but disregarded them, and that [those]

unconstitutional actions in fact caused his injuries") (quotation omitted).

The Amended Complaint does not allege facts plausibly showing that Mr. Dalen

suffered from excessive risks to his health or that the Commissioner knew about these risks

when Mr. Dalen was detained in the Stearns County Jail. The pleading's description of

Mr. Dalen's health is not specific to this period. It alleges generally that Mr. Dalen "suffers

from antisocial personality disorder, narcissistic personality disorder, and chemical

dependency." Am. Compl. ¶ 3. We know that Mr. Dalen was under a civil commitment

order beginning November 9, 2022. Ltr. to Dist. Judge at 2. But Mr. Dalen was not arrested

and detained in Stearns County until April 3, 2023, and the pleading includes no description

of his condition or medical needs at that time.  It is no doubt true that health conditions prompting a person's civil commitment might be so severe and pervasive that a commitment order itself might establish the presence and scope of an objectively serious medical need for some indefinite, prolonged period.  The allegations do not show that this is true with respect to Mr. Dalen.  There is no particular description of the Itasca County District Court's commitment order, but that court does not seem to have ordered that Mr. Dalen be detained in connection with his civil commitment.  *Id.*  With respect to the Commissioner's knowledge of Mr. Dalen's medical needs, the Amended Complaint alleges that she "actually knew about these needs because she receives court orders placing Plaintiff and Class members in her custody for examination and treatment of those needs." Am. Compl. ¶ 38.  Without allegations regarding the content of Mr. Dalen's commitment order, it is difficult to understand how the Commissioner might have known of Mr. Dalen's needs.  Regardless, no allegations suggest that the Commissioner knew of Mr. Dalen's medical needs as they might have existed in April 2023, when he was arrested and jailed in Stearns County.

D

*Count IV – Pretrial Punishment Claim*

Mr. Dalen alleges "[t]he conditions of county jails and state prisons are severely detrimental to the safety and wellbeing of individuals who suffer from disorders and dependencies like" Mr. Dalen and members of the proposed class he seeks to represent, so much that "their confinement is punitive."  Am. Compl. ¶¶ 45, 46.  Mr. Dalen alleges, therefore, that the Commissioner's "refusal to timely remove Plaintiff and Class members

from such conditions therefore constitutes punishment absent a criminal conviction in violation of the Constitution." *Id.* ¶ 48. In the Eighth Circuit, the standard announced in *Bell v. Wolfish*, 441 U.S. 520, 535 (1979), applies to conditions-of-confinement claims brought by pretrial detainees and civilly committed persons. *Karsjens II*, 988 F.3d at 1052–53. "In analyzing whether a condition of confinement is punitive, courts 'decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose.'" *Id.* at 1052 (quoting *Bell*, 441 U.S. at 538). A detainee may meet this standard in two ways: (1) the detainee may show that challenged conditions were intentionally punitive; and (2) absent an intent to punish, a detainee may "show that the conditions were not reasonably related to a legitimate governmental purpose or were excessive in relation to that purpose." *Stearns v. Inmate Servs. Corp.*, 957 F.3d 902, 907 (8th Cir. 2020).

This claim is not plausibly alleged. It is not clear what conditions are being challenged. The Amended Complaint alleges Mr. Dalen was detained, but it does not allege the conditions of his confinement. In other words, the pleading lacks allegations plausibly showing either that Mr. Dalen's Stearns County confinement conditions were intentionally punitive or excessive in some way particular to him. If Mr. Dalen's theory of this claim is that confinement in a jail is *per se* or always unconstitutionally punitive for persons who are under a civil commitment order, the Amended Complaint must allege facts showing why this is plausibly so. Apart from describing the policy justifications underlying the 48-hour rule, the pleading does not address this question. In his opposition brief, Mr. Dalen cites the Amended Complaint's allegations that conditions of incarceration

23

generally are harmful in comparison to treatment for persons subject to a civil commitment order.  *See* Pl.'s Mem. in Opp'n at 18 (citing Am. Compl. ¶¶ 3, 13, 45, 56, 77, 78).  This assertion, accepted as true, does not plausibly show that jail conditions encountered by Mr. Dalen or civilly committed persons generally either lack any reasonable relationship to a legitimate government purpose or are excessive in relation to such a purpose.  Finally, it seems worth noting that accepting Mr. Dalen's theory would necessitate holding that every civilly committed person jailed on criminal charges is, by virtue of their civilly committed status, subject to punitive confinement conditions.  No case or other authority has been cited or independently identified that might support this theory.

E

*Count V – Unreasonable Restraints Claim*

Mr. Dalen alleges the Commissioner "abridged Plaintiff and Class members' freedom from bodily restraint."  Am. Compl. ¶ 54; *see id.* ¶¶ 51–58.  "[I]nvoluntarily civilly committed persons hold a protected liberty interest to be free from unnecessary bodily restraint."  *Montin v. Gibson*, 718 F.3d 752, 754–55 (8th Cir. 2013) (citing *Youngberg v. Romeo*, 457 U.S. 307, 320–22 (1982)).  A "professional-judgment test" is applied to assess the constitutionality of a bodily restraint.  *Id.* at 755 (quoting *Youngberg*, 457 U.S. at 321).  Under this test, "great deference is owed to the professional judgment of a qualified professional charged with balancing the plaintiff's freedom from bodily restraint against the safety of the public, the plaintiff, and other patients."  *Id*.

This claim is not plausibly alleged.  The Amended Complaint alleges no facts describing whether or how Mr. Dalen or any potential class member was bodily restrained

24

in a relevant sense.  All we are told is that Mr. Dalen and potential class members were jailed following their arrest on criminal charges.  Mr. Dalen fairly cites cases holding that an unreasonable-restraint claim may apply "to conditions beyond actual physical restraints."  Pl.'s Mem. in Opp'n at 24.  Though some of the cases Mr. Dalen cites do not support the stated proposition,[6] the propositions that an unconstitutional restraint may take varied forms and that *Youngberg*'s professional-judgment standard might apply to evaluate a Fourteenth Amendment challenge to varied forms of restraint seem noncontroversial. Regardless, Mr. Dalen cites no authority to support the idea that pretrial detention in a jail without anything more is a "restraint" susceptible to *Youngberg* analysis.  The absence of allegations in the Amended Complaint showing either what professional judgment was exercised with respect to Mr. Dalen's Stearns County jailing or how this judgment fails to meet appropriate professional standards confirms the point.

---

[6]   For example, Mr. Dalen cites *United States v. Holmes*, 900 F.2d 1322 (8th Cir. 1990) (Mem.), for the proposition that *Youngberg*'s professional-judgment standard applies to claims challenging forcible medication.  Pl.'s Mem. in Opp'n at 24.  Whether that proposition is correct, *Holmes* does not support it.  The case does not cite *Youngberg*, apply its standard, or say that the standard applies to forced-medication claims.  900 F.2d at 1322.  As another example, Mr. Dalen cites *Arnzen v. Palmer*, 713 F.3d 369 (8th Cir. 2013), for the proposition that the *Youngberg* standard applies to judge the constitutionality of security cameras placed in bathrooms at a sex-offender treatment facility.  Pl.'s Mem. in Opp'n at 24.  Not so.  In *Arnzen*, the Eighth Circuit noted that the district court had applied *Youngberg* to analyze the claim.  713 F.3d at 372.  But the Eighth Circuit analyzed the claim as a search under the Fourth Amendment and nowhere characterized the placement of cameras as a "restraint" to be analyzed under the Fourteenth Amendment. *See id.* at 372–75.

F

*Count VI – Substantive Due Process Claim*

Mr. Dalen alleges the Commissioner violated his and potential class members' Fourteenth Amendment substantive-due-process rights by detaining them "in the jails and prisons with knowledge that they would likely suffer severe mental and physical injuries" and by "lobbying, either individually and/or through counsel," for the 2023 amendment to § 253B.10, subdiv. 1.  Am. Compl. ¶¶ 64, 65.  As the Eighth Circuit has explained:

> In addition to its procedural protections, the Due Process Clause protects individual liberties from government action "regardless of the fairness of the procedures used to implement them." *Mills v. City of Grand Forks*, 614 F.3d 495, 498 (8th Cir. 2010) (internal quotation marks omitted).  To state a substantive due process claim against a state official, a plaintiff must demonstrate that a fundamental right was violated and that the official's conduct shocks the conscience.  *Folkerts v. City of Waverly*, 707 F.3d 975, 980 (8th Cir. 2013).  Whether conduct shocks the conscience is a question of law.  *Id.* Conscience shocking conduct only includes "the most severe violations of individual rights that result from the brutal and inhumane abuse of official power." *White v. Smith*, 696 F.3d 740, 757–58 (8th Cir. 2012) (quotation marks omitted).  "Only a purpose to cause harm *unrelated to the legitimate object of* the government action in question will satisfy the element of arbitrary conduct shocking to the conscience, necessary for a due process violation." *Folkerts*, 707 F.3d at 981 (cleaned up).

*Mitchell v. Dakota Cnty. Soc. Servs.*, 959 F.3d 887, 898 (8th Cir. 2020).  A fundamental right is one that is "objectively, 'deeply rooted in this Nation's history and tradition.'" *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997) (quoting *Moore v. City of E. Cleveland*, 431 U.S. 494, 503 (1977)).

Here, the Amended Complaint does not allege facts plausibly showing the violation of a fundamental right or conscience-shocking conduct. Mr. Dalen disavows claiming "a fundamental substantive due process right to treatment in an inpatient setting." Pl.'s Mem. in Opp'n at 27 n.7. He alleges no facts addressing whether § 253B.10, subdiv. 1's 48-hour rule, or a like concept, is "deeply rooted in this Nation's history and tradition." *Glucksberg*, 521 U.S. at 720–21. A hypothetical failure to comply with the 48-hour rule might plausibly be conscience-shocking depending on the failure's duration and perhaps other considerations, but the Amended Complaint alleges no facts showing or implying that Mr. Dalen's Stearns County detention was conscience-shocking in any respect specific to it. The Amended Complaint takes a different approach. It appears to contend that every decision to detain someone who is civilly committed beyond 48 hours is conscience-shocking, *see* Am. Compl. ¶¶ 64–65, but it contains no factual allegations that would plausibly support that categorical assertion. Mr. Dalen cites no authority holding that a state official's successful legislative advocacy might trigger a substantive-due-process violation.

VII

*The Preliminary Injunction Motion*

Regarding Mr. Dalen's motion for a preliminary injunction, the absence of merit to Mr. Dalen's federal claims means he is not likely to prevail with respect to his § 1983 damages claims or his claims challenging the 2023 amendment to § 253B.10, subdiv. 1. Mr. Dalen neither distinguishes his state constitutional claims from his federal

constitutional claims nor relies on his state tort damages claims to challenge implementation of the amendment.

Nor has Mr. Dalen shown that he is likely to suffer irreparable harm. As Mr. Dalen notes in his supporting brief, he has been admitted to a treatment facility. *See* Pl.'s Mem. in Supp. [ECF No. 28] at 4. Mr. Dalen identifies no particular ongoing threat that he will be charged with another crime and jailed while under a commitment order, and the likelihood of an unnamed potential class member being jailed while civilly committed cannot justify the issuance of an injunction in Mr. Dalen's favor.

The last two factors are the balance of the relative harms and the public interest. For practical purposes, these factors "merge" when a plaintiff seeks injunctive relief against the government. *Nken v. Holder*, 556 U.S. 418, 435 (2009); *see Angelica C. v. Immigr. & Customs Enf't*, No. 20-cv-913 (NEB/ECW), 2020 WL 3441461, at *17 (D. Minn. June 5, 2020), *report and recommendation adopted*, 2020 WL 3429945 (D. Minn. June 23, 2020). Now that he is receiving treatment, the harm Mr. Dalen might suffer in the absence of an injunction seems unclear and probably remote. Public interest considerations do not clearly favor either party, but boil down to competing, sincerely held policy concerns that—absent a constitutional problem—the legislature is best positioned to assess. *See Let Them Play MN v. Walz*, 517 F. Supp. 3d 870, 888 (D. Minn. 2021).

## VIII

### *Where This Case Goes From Here*

A district court "may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction."

28 U.S.C. § 1367(c)(3). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Barstad v. Murray Cnty.*, 420 F.3d 880, 888 (8th Cir. 2005) (quoting *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). And the Eighth Circuit has instructed district courts not to exercise supplemental jurisdiction over state-law claims when, as here, all federal claims are dismissed well before trial. *See Hervey v. Cnty. of Koochiching*, 527 F.3d 711, 726–27 (8th Cir. 2008). Thus, without more, the dismissal of Mr. Dalen's federal claims, combined with the absence of diversity jurisdiction under 28 U.S.C. § 1332(a), would prompt the with-prejudice dismissal of the federal claims, the entry of judgment on those claims, and remand of Mr. Dalen's state claims to Dakota County District Court.

Notwithstanding these principles, Mr. Dalen has asked that any dismissal be without prejudice. Mr. Dalen represents that any dismissed claims might conceivably be repleaded with success. This is because, as Mr. Dalen describes things, "new facts surrounding Defendant's misconduct continue to become available, including Defendant failing to admit committed individuals even more than 48 hours after determining that a medically appropriate bed is available." Pl.'s Mem. in Opp'n at 42. In view of Mr. Dalen's request and these representations, the better answer is to allow Mr. Dalen the opportunity to file an amended pleading in which he may attempt to cure the dismissal-worthy problems described in this order and perhaps allege additional facts discovered after briefing was closed on these motions. Mr. Dalen's federal constitutional claims will therefore be

dismissed without prejudice, and Mr. Dalen will be given a deadline by which to file a Second Amended Complaint.  If he opts not file a Second Amended Complaint by the prescribed deadline, his federal constitutional claims will be dismissed with prejudice, judgment will be entered as to those claims, and the case will be remanded to Dakota County District Court.  Judgment will be entered at this time only with respect to the denial of Mr. Dalen's motion for a preliminary injunction.

**ORDER**

Therefore, based upon the foregoing, and on all of the files, records, and proceedings herein, **IT IS ORDERED THAT**:

1.      Defendant Jodi Harpstead's Motion to Dismiss [ECF No. 11] is **GRANTED IN PART**.  Plaintiff Kyle Jerome Dalen's claims arising under 42 U.S.C. § 1983 and/or the United States Constitution are **DISMISSED WITHOUT PREJUDICE**.

2.      On or before February 6, 2024, Plaintiff Kyle Jerome Dalen may file a second amended complaint.  If no second amended complaint is filed by that deadline, judgment will be entered dismissing Mr. Dalen's claims arising under 42 U.S.C. § 1983 and/or the United States Constitution with prejudice and the case will be remanded to Dakota County District Court for the reasons described in this Order.

3.      Plaintiff Kyle Jerome Dalen's Motion for Preliminary Injunction [ECF No. 26] is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date: January 16, 2024                              s/ Eric C. Tostrud
                                                    Eric C. Tostrud
                                                    United States District Court